**BENJAMIN, Supt., Appellant,**

v.

**PIPOLY et al., Appellees.**

[Cite as *Benjamin v. Pipoly,* 155 Ohio App.3d 171, 2003-Ohio-5666.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 03AP–21.

Decided Oct. 23, 2003.

Jim Petro, Attorney General; Dinsmore & Shohl, L.L.P., George H. Vincent, Stephen G. Schweller, Neal D. Baker, Gregory A. Harrison and Richard D. Porotsky, Special Counsel to the Ohio Attorney General, for appellant.

Reminger & Reminger Co., L.P.A., and Nicholas D. Satullo, for appellee Ronald E. Pipoly Jr.

Owens & Krivda and Timothy J. Owens, for appellee John H. Fehler.

Chester, Willcox & Saxbe, L.L.P., David J. Butler and Richard A. Frye, for appellee Richard J. Babel.

J. Kurt Denkwalter, for appellee Laura B. Darcy.

Mazanec, Raskin & Ryder Co., L.P.A., John T. McLandrich, Carl E. Cormany and Todd M. Raskin, for appellee Michael J. Saxon.

Taft, Stettinius & Hollister, L.L.P., Thomas J. Lee and Lawrence D. Walker, for appellee Bryan K. Griffin.

––––––––––

SADLER, Judge.

{¶ 1} This is an appeal by appellant, Ann H. Womer Benjamin, Superintendent of the Ohio Department of Insurance, in her capacity as liquidator of Credit General Insurance Company ("CGIC") and Credit General Indemnity Company ("CGIND"). She appeals from an order of the Franklin County Court of Common Pleas staying her action against appellees, Michael J. Saxon, Laura B. Darcy, John H. Fehler, Richard J. Babel, Ronald E. Pipoly Jr., and Bryan K. Griffin, and ordering that the case proceed to arbitration.

{¶ 2} Appellant states her sole assignment of error as follows:

"The Trial Court erred in staying the Liquidator's claims against each of the Defendant–Appellees pending arbitration."

{¶ 3} For the reasons that follow, we sustain appellant's assignment of error and reverse the judgment of the trial court.

{¶ 4} Former Superintendent of the Ohio Department of Insurance, J. Lee Covington II, was appointed liquidator of CGIC and CGIND pursuant to orders of the Franklin County Court of Common Pleas on January 5, 2001, and December 12, 2000, respectively. In his capacity as the liquidator of these two insolvent insurance companies, Covington instituted this action against appellees (and others) on January 14, 2002.

{¶ 5} Appellees served as directors and/or officers of CGIC and CGIND during the several years immediately preceding the institution of liquidation proceedings for the two entities. Covington's complaint contains claims for breach of numerous fiduciary duties allegedly owed to CGIC and CGIND by the various appellees. These breach of fiduciary duty claims are based on the appellees' alleged knowledge and concealment of serious problems with CGIC and CGIND and their subsequent failure to correct the problems. The complaint alleges that

these breaches of fiduciary duties resulted in injuries to CGIC and CGIND, contributed to their insolvency, and detrimentally affected the interests of CGIC's and CGIND's insureds, claimants, and creditors.

{¶ 6} Each appellee moved the trial court to stay the action and refer appellant's claims to arbitration. By entry dated December 10, 2002, the trial court sustained the six motions to stay and refer to arbitration. Thereafter, appellant succeeded Covington as the Superintendent of the Ohio Department of Insurance and thus was substituted as the plaintiff in the action below. Appellant timely appealed the trial court's December 10, 2002 judgment, and the issue of the propriety of the trial court's decision to stay and refer to arbitration all of appellant's claims is now before this court.

{¶ 7} The facts pertinent to this appeal are as follows. All appellees, with the exception of Babel, served on the Board of Directors of CGIC and CGIND. All appellees, including Babel, served as officers of CGIC and CGIND. In connection with their service in these capacities, each appellee entered into an employment agreement with Phoenix Management Enterprises, Inc. ("Phoenix"). Phoenix later became known as PRS Management Group, Inc. ("PRS"). The term "the Company" is used in each employment agreement and is defined therein as Phoenix and "any person or entity * * * that controls, is controlled by or is under common control with" Phoenix's parent corporation, Phoenix Insurance Group, Inc., or any such affiliated entity. CGIC and CGIND were so controlled and thus fell under the definition of "the Company" in appellees' employment agreements.

{¶ 8} Each employment agreement contains an arbitration provision as follows: 10. Arbitration. In the event of any claim, dispute or disagreement arising out of, relating to, or concerning the interpretation of, any term, clause or provision of this Agreement, or the relationship, rights and obligations created by this Agreement, and upon written notice by the party asserting any such claim, dispute or disagreement, the parties agree to confer in good faith and attempt to resolve the claim, dispute or disagreement informally, unless equitable relief is sought to enjoin or restrain the violation of Sections 5, 6 and/or 7 hereof. If such claim, dispute or disagreement is not resolved within thirty (30) days, the claim, dispute or disagreement shall be finally settled by binding arbitration in Cleveland, Ohio under the rules of the American Arbitration Association. The parties shall appoint a single arbitrator selected mutually or selected according to the procedures of the Cleveland Office of the American Arbitration Association. The arbitrator's decision is final and binding upon both parties. Each party shall pay one-half (1/2) of the fees and expenses of the arbitrator. Any ambiguity regarding the arbitrability of any dispute shall be resolved in favor of arbitrability. Notwithstanding any provision herein relating to arbitration,

Company shall have the right to petition a Court for immediate injunctive relief (without prior notice to Employee), in accordance with Section 8 hereof, for any breach or threatened breach of Sections 5, 6 and/or 7 of this Agreement, and any such injunctive relief shall remain in full force and effect notwithstanding any arbitration proceeding commenced pursuant to Section 10 of this Agreement.

{¶ 9} Appellees argued below, and argue again here, that all of appellant's claims are subject to the arbitration clause contained in the employment agreements. Appellant has "disavowed" all of appellees' employment agreements pursuant to R.C. 3903.21(A)(11).

{¶ 10} Saxon, Babel, and Fehler also relied in the trial court upon documents entitled "Mutual Agreement to Arbitrate." Each four-page document purports to describe in detail the process of arbitration agreed upon between these appellees and the "Company." In the mutual agreements to arbitrate, the term "Company" is defined to include several specific entities including CGIC and "any future partially or wholly owned subsidiary of The Phoenix Insurance Group, Inc., as well as all benefits plans, benefits plans' sponsors, fiduciaries, administrators, affiliates, and all successors and assigns of any of them."

{¶ 11} The mutual agreements to arbitrate concern "any and all disputes, claims or disagreements of any nature between myself and the Company, including any disputes regarding my employment with, or separation from the Company." The mutual agreements to arbitrate go on to describe certain specific claims that expressly are not covered by the agreements. It is undisputed that appellant's claims are not included within these express exemptions. Each document purports to be executed by Saxon, Babel, or Fehler, and in the latter part of the year 1996, by Deborah Yermahaw, who designates herself therein as a "payroll associate" of CGIC. As with the employment agreements, appellant has disavowed each mutual agreement to arbitrate, pursuant to R.C. 3903.21(A)(11).

{¶ 12} The third document relied upon by some of the appellees in support of their motions for arbitration is an "Assignment and Assumption of Employment Agreements" dated August 28, 2000. This document purports to assign from PRS (formerly known as Phoenix) to CGIC all rights and obligations under the employment agreements listed on Annex A attached to the assignment (even though CGIC was already a party to these agreements by their terms).

{¶ 13} Included in Annex A are Babel's January 1, 2000 agreement (but not Babel's September 1, 1996 agreement), Fehler's January 1, 1996 agreement, Griffin's January 1, 1996 agreement, Pipoly's September 1, 1996 agreement, and Saxon's January 1, 1997 agreement. The assignment was purportedly executed

by John Boyko, designated as president of PRS, and Lewis V. Battaglia, designated as president of CGIC.

{¶ 14} For purposes of Babel's motion for arbitration, Babel and appellant stipulated that CGIC agreed to be placed under formal supervision by appellant on June 5, 2000. The appellees whose employment agreements were assigned by PRS to CGIC argued that appellant should be bound by the assignment and the terms of the employment agreements and should be estopped from disavowing them. They contended that appellant should be charged with full knowledge and acceptance of the assignment and the employment agreements by virtue of appellant's supervisory role over the affairs of CGIC at the time the assignment was made. Appellees argued that appellant should be deemed to have agreed to arbitration even though neither appellant herself nor her predecessor actually executed any of the employment agreements or the subsequent assignment.

{¶ 15} Appellees maintained that appellant stands in the shoes of CGIC and as such, is bound by any provision in any of the employment agreements, the assignment, and the mutual agreements to arbitrate to which CGIC would be bound. They further argued that the arbitration-related language of the employment agreements and the mutual agreements to arbitrate clearly subject appellant's claims to arbitration. They argued that to give effect to the arbitration provision in their employment contracts would not affect the priority of creditors of the liquidation estate and would not adversely affect any party to the liquidation.

{¶ 16} The trial court agreed. In its decisions sustaining appellees' motions, the trial court first noted the general presumption in favor of the enforceability of arbitration clauses contained in contracts admittedly signed by both parties. *Roberts v. Bank of America NT & SA* (1995), 107 Ohio App.3d 301, 668 N.E.2d 942. The trial court next noted that R.C. 3903.21 authorizes appellant to "affirm or disavow any contracts to which the insurer is a party." However, the trial court, relying upon this court's opinion in *Fabe v. Columbus Ins. Co.* (1990), 68 Ohio App.3d 226, 587 N.E.2d 966, concluded that it should give effect to both the liquidation statutes and the arbitration clause.

{¶ 17} The trial court essentially discounted PRS's assignment of the employment agreements to CGIC, finding that CGIC was bound by all of the appellees' employment agreements, with or without the existence of the assignment. The trial court also apparently agreed that CGIC (and thus, appellant) was bound by the mutual agreements to arbitrate, despite the lack of evidence in the record that Ms. Yermahaw, the payroll associate, possessed the authority to bind CGIC.

{¶ 18} On appeal, appellant challenges each of the trial court's findings. Appellant argues that the arbitration clauses contained in appellees' employment agreements are unenforceable against her because she is not a party to the

employment agreements and she has expressly disavowed them pursuant to R.C. 3903.21(A)(11).

{¶ 19} Appellant points out that neither she nor her predecessor personally signed appellees' employment agreements or mutual agreements to arbitrate, and the creditors and policyholders that she represents in her capacity as liquidator have also not signed any agreement with appellees to arbitrate the claims subject of this action. Appellant argues that these facts, coupled with the fact that appellant has expressly disavowed any agreements under which CGIC or CGIND may have been obligated to arbitrate, require reversal.

{¶ 20} In response, appellees argue that though appellant is not a signatory to the mutual agreements to arbitrate or to the employment agreements or their subsequent assignment, she should nonetheless be bound by the arbitration language contained in these documents because CGIC and CGIND—the entities on whose behalf she was appointed the liquidator—were bound by them and remain so. The appellees argue that appellant stands in the shoes of the insolvent insurance companies whose assets she is charged with liquidating and thus should be bound just as they would be.

{¶ 21} Appellees also argue that estoppel should operate to enforce the arbitration clauses contained in the employment agreements because the assignment thereof occurred during the period of appellant's supervision of CGIC and CGIND. Essentially, appellees ask the court to impute to appellant knowledge of, and assent to be bound by, the terms of the employment agreements listed in Annex A to the assignment because appellant, though not yet judicially appointed as liquidator, was, through her office, supervising the affairs of CGIC and CGIND at the time the assignment was made.

{¶ 22} Appellees also argue that appellant's power to disavow contracts should not operate to nullify the arbitration clauses contained in their employment contracts so long as enforcement of same would not affect the priority of creditors of the liquidation estate or adversely affect any party to the liquidation. For support of this proposition, appellees rely, as did the trial court, upon the case of *Fabe*, supra, 68 Ohio App.3d 226, 587 N.E.2d 966.

{¶ 23} Appellant argues that strong policies embodied within Ohio's insurance-liquidation statutes outweigh the general policy favoring arbitration as a means of settling disputes. For support of this contention, she relies upon this court's more recent decision in *Covington v. Lucia*, 151 Ohio App.3d 409, 2003-Ohio-346, 784 N.E.2d 186, discretionary appeal not allowed, 99 Ohio St.3d 1435, 2003-Ohio-2902, 789 N.E.2d 1117. Appellant argues that arbitration would conflict with the policies established by the insurance-liquidation statutes, including those of economy and efficiency of liquidation; fairness to claimants, creditors and shareholders of the insolvent insurance company; and uniform control over the

activities of the liquidator by the courts. Thus, in this context, appellant argues that arbitration no longer enjoys favored status.

{¶ 24} We begin our analysis of the issues presented by this appeal with an examination of the statutory scheme governing insurance company liquidations in Ohio. R.C. 3903.18(A) vests broad powers in the superintendent of insurance with respect to the assets of the insolvent insurance company:

> An order to liquidate the business of a domestic insurer shall appoint the superintendent of insurance and his successors in office as liquidator and shall direct the liquidator forthwith to take possession of the assets of the insurer and to administer them under the general supervision of the court. The liquidator shall be vested by operation of law with the title to all of the property, contracts, and rights of action and all of the books and records of the insurer ordered liquidated, wherever located, as of the entry of the final order of liquidation.

{¶ 25} R.C. 3903.02(D) provides, "[t]he purpose of [the insurance-liquidation statutes] is the protection of the interests of insureds, claimants, creditors, and the public generally, with minimum interference with the normal prerogatives of the owners and managers of insurers * * *." The General Assembly also determined that the insurance-liquidation statutes are to be liberally construed to effectuate this purpose. R.C. 3903.02(C).

{¶ 26} The General Assembly specified that, in addition to other grounds for jurisdiction, the courts have jurisdiction over any person domiciled in Ohio and served with a complaint in a civil action filed by the liquidator if that person, "is or has been an officer, manager, trustee, organizer, promoter, or person in a position of comparable authority or influence in an insurer against which a rehabilitation or liquidation order is in effect when the action is commenced, in any action resulting from such a relationship with the insurer." R.C. 3903.04(C)(3).

{¶ 27} R.C. 3903.21(A) contains a nonexclusive list of 23 enumerated powers vested in the court-appointed liquidator. Thereunder, a liquidator may, inter alia, "[e]nter into such contracts as are necessary to carry out the order to liquidate, and to affirm or disavow any contracts to which the insurer is a party." R.C. 3903.21(A)(11). R.C. 3903.21(B) provides:

> The enumeration, in this section, of the powers and authority of the liquidator shall not be construed as a limitation upon [her], nor shall it exclude in any manner [her] right to do such other acts not herein specifically enumerated, or otherwise provided for, as may be necessary or appropriate for the accomplishment of or in aid of the purpose of liquidation.

{¶ 28} Ohio's statutory insurance liquidation scheme is abounding in features designed to vest within the liquidator broad and largely unfettered powers, under

**180**

the supervision of the courts, to maximize the assets available to her in discharging her duties to claimants, shareholders, and creditors of the insolvent insurance company. The statutes require us to liberally construe them in favor of their stated purpose. R.C. 3903.02(C).

{¶ 29} We note that the General Assembly thought it important to augment Ohio's long-arm statute and procedural rules governing in personam jurisdiction and specifically provide that the courts of this state are vested with personal jurisdiction over former officers and directors of insolvent insurers in any civil action brought by a liquidator arising from those persons' relationships with the insurer. We are also mindful that the legislature included the general public in its list of those whose interests it sought to protect in enacting Chapter 3903 of the Revised Code. See *Anderson v. Ohio Dept. of Ins.* (1991), 58 Ohio St.3d 215, 569 N.E.2d 1042, paragraph two of the syllabus, where the majority held that R.C. Chapter 3903 was enacted for the benefit of the general citizenry.

{¶ 30} R.C. Chapter 2711 governs arbitration. R.C. 2711.01 provides that arbitration clauses "shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract." R.C. 2711.02(B) provides:

If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration.

{¶ 31} By the plain language of these provisions, prior to making any determination regarding the arbitrability of any issue raised by the parties' claims, a court must first determine whether the written arbitration agreement being invoked is in fact enforceable under basic contract precepts. See *Duryee v. Rogers* (Sept. 23, 1999), Franklin App. Nos. 98AP–1255 and 98AP–1256, 1999 WL 744341, at * 8. See, also, *Covington v. Lucia,* 151 Ohio App.3d 409, 784 N.E.2d 186, at ¶ 16. This determination must begin with application of fundamental principles of state contract law. Id. See, also, *Perry v. Thomas* (1987), 482 U.S. 483, 492–493, 107 S.Ct. 2520, 96 L.Ed.2d 426, at fn. 9.

{¶ 32} In Ohio, a party to an action generally cannot be required to arbitrate a dispute between itself and a second party unless the parties have previously agreed in writing to arbitration of those disputes. *Boedeker v. Rogers* (1999), 136 Ohio App.3d 425, 429, 736 N.E.2d 955, discretionary appeal not allowed in (2000), 88 Ohio St.3d 1503, 727 N.E.2d 925. In *Boedeker,* individual

physician policyholders filed suit against the former chief financial officer ("CFO") of the defunct P.I.E. Mutual Insurance Company. The physicians alleged, inter alia, that the former CFO had breached certain fiduciary duties, resulting in the demise of the company and nonpayment of claims under the plaintiffs' P.I.E. policies. The CFO sought a stay and referral to arbitration of all of the plaintiffs' claims, pursuant to an arbitration clause contained in the CFO's employment contract with P.I.E. The trial court denied the motion to stay and to refer to arbitration. The Eighth District Court of Appeals affirmed, holding that since none of the physician policyholders were signatories to the CFO's employment contract, they could not be required to submit their claims to arbitration pursuant thereto.

{¶ 33} In *Teramar Corp. v. Rodier Corp.* (1987), 40 Ohio App.3d 39, 531 N.E.2d 721, the trial court ordered a surety to submit to arbitration pursuant to an arbitration clause contained not in the guaranty signed by the surety but in the underlying franchise agreement to which the surety was not a party. The Eighth District Court of Appeals reversed, holding that "[a]rbitration is a matter of contract and, in spite of the strong policy in its favor, a party cannot be compelled to arbitrate a dispute which he has not agreed to submit to arbitration." Id. at paragraph one of the syllabus.

{¶ 34} In *Council of Smaller Ents. v. Gates, McDonald & Co.* (1998), 80 Ohio St.3d 661, 687 N.E.2d 1352, the Supreme Court of Ohio stated, " 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' * * * This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed to submit such grievances to arbitration." Id. at 665, 687 N.E.2d 1352, quoting *AT & T Technologies, Inc. v. Communications Workers of Am.* (1986), 475 U.S. 643, 648–649, 106 S.Ct. 1415, 89 L.Ed.2d 648.

{¶ 35} The court in *Council of Smaller Ents.* recognized that when a contract *entered into by the parties* contains an arbitration clause, there is a presumption of arbitrability because " 'an order to arbitrate the particular grievance should not be denied unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' " Id. at 666, 687 N.E.2d 1352, quoting *AT & T Technologies, Inc.,* supra, 475 U.S. 643, at 650, 106 S.Ct. 1415, 89 L.Ed.2d 648, quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.* (1960), 363 U.S. 574, 582–583, 80 S.Ct. 1347, 4 L.Ed.2d 1409.

{¶ 36} However, the court in *Council of Smaller Ents.* noted that because no party can be required to submit to arbitration when it has not first agreed to do so, in a case in which the party resisting arbitration is not a signatory to any written agreement to arbitrate, a presumption *against* arbitration arises. This presumption against arbitration and the question whether any

agreement to arbitrate was made between the parties are to be dealt with *before* any consideration is given to the "arbitrability" of the particular dispute under the language employed in the arbitration provision. Id. at 667, 687 N.E.2d 1352. See, also, *First Options of Chicago, Inc. v. Kaplan* (1995), 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985.

{¶ 37} In the present case, neither appellant nor her predecessor signed either the employment agreements or the mutual agreements to arbitrate relied upon by appellees. Thus, a presumption against arbitration exists. We conclude that appellees have not and cannot sufficiently rebut this presumption, particularly in light of the strong policy considerations embodied within Chapter 3903 of the Ohio Revised Code, that vest broad powers both in the liquidator and in the courts.

{¶ 38} A liquidator emanates from an order of the court and acts as an arm or extension of the court. A liquidator is appointed to perform specific functions, including preserving and maximizing the value of the insolvent insurer and protecting the interests of both those with direct pecuniary connections to the insurer and the general public. The liquidator must have freedom of action to do those acts most beneficial in achieving her objectives. Within this demesne, the liquidator may affirm or disavow the rights and obligations of the interest with which she is charged, and it would be inconsistent to compel arbitration against her when such an obligation predates her appointment.

{¶ 39} Thus, we hold that when a liquidator is appointed by court order, as in the instant case, she is not automatically bound by the pre-appointment contractual obligations of the insurer. To be so bound, the liquidator must affirmatively indicate her election to be responsible for the prior obligations of the former operators. Since appellant was not a party to appellees' employment agreements or the assignment thereof and was not a party to any of the mutual agreements to arbitrate,[1] and because there is nothing in the record to demonstrate that she adopted any of these agreements and expressly assumed the

---

1. Even if we were to determine that the liquidator, as a general matter, is bound by the mutual agreements to arbitrate, these agreements would still not be enforceable because appellees failed to meet their burden of proof that the agreements were executed by one with authority to bind CGIC. In the absence of express authority conferred upon its officers or agents, and of such a course of dealing with the world as clearly implies authority to do the controverted act, a corporation can be bound only by its board of directors. An agent cannot enlarge his own authority by an unauthorized representation as to its extent. *Kroeger v. Brody* (1936), 130 Ohio St. 559, 5 O.O. 210, 200 N.E. 836. "The fact that one undertakes to make a contract as agent for a party, does not necessarily result in such party being bound by the contract made. In order to enforce any rights against such party under such a contract, it is necessary to establish that the one who assumed to act as agent for that party had power to make the contract for that party." *Miller v. Wick Bldg. Co.* (1950), 154 Ohio St. 93, 42 O.O. 169, 93 N.E.2d 467, at paragraph one of the syllabus.

liabilities contained therein, the arbitration provisions within these agreements may not be enforced against her.

{¶ 40} Moreover, we hold that where, as here, private arbitration impinges upon a broad statutory scheme that invests sweeping powers in a state official, enforcement of arbitration ipso facto violates public policy. Though the Superintendent of the Ohio Department of Insurance takes the place of the insolvent insurer for all practical purposes, it is clear from the statutory scheme that the General Assembly did not contemplate turning over the administration of liquidation proceedings and incidental actions to private arbitrators in forums shielded from public scrutiny, judicial review of which would be sharply limited. Without express statutory authorization, we cannot say that the legislature intended that arbitrators, subject to selection by the parties themselves and charged with the execution of no public trust, would determine such matters.

{¶ 41} As the United States Court of Appeals for the Seventh Circuit stated in *Blackhawk Heating & Plumbing Co. v. Geeslin* (C.A.7, 1976), 530 F.2d 154, in dismissing for lack of jurisdiction an in rem suit to recover property held by the insurer's statutory liquidator:

"The states have a paramount interest in seeing that liquidation proceedings conducted by court-appointed liquidators and overseen by their courts are free from the interference of outside agencies. This interest is of even greater importance when the company undergoing liquidation is a domestic insurance company or other financial institution. The interests of the company's owners, policyholders, and creditors, as well as the public, are best served and protected by an orderly and efficient process of liquidation. The liquidation of [an insolvent insurance company] is best left to a proceeding which will settle all of its affairs and dispose of all of its property." Id. at 159. (Citations and footnotes omitted.)

{¶ 42} The structure of Ohio's system serves the state's strong interest in centralizing claims and defenses raised against an insolvent insurer into a single forum. Absent express statutory authorization for private arbitration to proceed without assent to arbitrate by the liquidator, we hold that the public policy expressed throughout R.C. Chapter 3903, and particularly within R.C. 3903.02 and 3903.21, defeats any general attitude of the courts favoring arbitration.

{¶ 43} In so holding, we expressly overrule *Fabe v. Columbus Ins. Co.* (1990), 68 Ohio App.3d 226, 587 N.E.2d 966, a case cited repeatedly by appellees. In that case, this court held that an arbitration provision contained in a reinsurance agreement was binding upon the court-appointed liquidator of Columbus Insurance Company. The case involved the liquidator's attempt to recover monies one

defendant paid to another defendant when the monies were allegedly owed to Columbus Insurance Company. The court in *Fabe* made not even passing mention of the fact that the court-appointed liquidator was not a party to the reinsurance agreement, and failed to note whether the record revealed that the liquidator had expressly agreed to the obligations of the insurer pursuant to the reinsurance agreement.

{¶ 44} The *Fabe* court simply treated the matter as if the liquidator *was* a party to the reinsurance agreement and noted that the modern tendency in the law was to favor and encourage arbitration, and that nothing in the liquidation statutes *prohibits* arbitration. Therefore, the court held that, if possible, R.C. Chapters 3903 and 2711 should be construed so as to give effect to both. The *Fabe* court determined that "only if compelling arbitration would somehow interfere with the liquidator's powers under R.C. 3903.18 and 3903.21 could such a contractual arbitration provision be held to be unenforceable in liquidation proceedings." Id. at 233, 587 N.E.2d 966.

{¶ 45} The *Fabe* court went on to state that because any monies the liquidator might recover in its suit against the reinsurers are not part of the liquidation estate until the dispute is resolved, those monies are not assets of the liquidation estate. Thus, the *Fabe* court held, arbitration of the dispute would not adversely affect the insolvent insurer's assets. However, R.C. 3903.18(A) vests in the liquidator title to not only property and contracts but to "rights of action." Further, R.C. 3903.21(A)(11) grants the liquidator the power to "affirm or disavow any contracts to which the insurer is a party." Contrary to the court's view in *Fabe*, we hold that appellant's causes of action against appellees are an asset of the insolvent insurer even before the attendant legal and factual issues are fully and finally determined. In our view, compelling arbitration against the will of the liquidator will *always* interfere with the liquidator's powers and will *always* adversely affect the insolvent insurer's assets.

{¶ 46} Our holding today logically follows decisions of this court and the Supreme Court of Ohio decided since *Fabe*. In *Council of Smaller Ents. v. Gates, McDonald & Co.* (1998), 80 Ohio St.3d 661, 687 N.E.2d 1352, the court expressly noted that a presumption against arbitration arises when the party resisting arbitration never agreed to the arbitration. Later, in *Covington v. Am. Chambers Life Ins. Co.*, 150 Ohio App.3d 119, 2002-Ohio-6165, 779 N.E.2d 833, this court further diluted *Fabe*'s precedential value.

{¶ 47} In *Covington v. Am. Chambers*, this court reversed a trial court's order enforcing an arbitration clause against the liquidator of an insolvent insurance company. In so doing, this court rejected essentially the same *Fabe*-based argument advanced herein by appellees and stated, "[w]e read *Fabe v. Columbus Ins. Co., supra*, to stand for the proposition that enforcement of an arbitration

provision is *not mandatory* if it would affect the priority of claims or adversely affect a party to the liquidation proceeding." Id. at 125–126, 2002–Ohio–6165, 779 N.E.2d 833. (Emphasis added.)

{¶ 48} More recently, in *Covington v. Lucia,* 151 Ohio App.3d 409, 2003-Ohio-346, 784 N.E.2d 186, discretionary appeal not allowed, 99 Ohio St.3d 1435, 2003-Ohio-2902, 789 N.E.2d 1117, two former officers and directors of CGIC— Robert Lucia and Gregory Fazekash—sought to enforce arbitration clauses against appellant's predecessor, Covington. As in the present case, the liquidator in *Lucia* had alleged various acts of corporate mismanagement and sought recovery under, inter alia, a theory of breach of fiduciary duties.

{¶ 49} Lucia, like appellees herein, sought to enforce an arbitration clause contained in his employment agreement; Fazekash sought enforcement of an arbitration clause contained in his severance agreement. This court held that both clauses were unenforceable against the liquidator. In *Lucia,* this court, without saying so, employed the presumption against arbitration discussed in *Council of Smaller Ents.* and implicitly overruled *Fabe,* just as we now do expressly.

{¶ 50} The arbitration provision in Lucia's agreement was broadly worded to include any "dispute arising under [the] agreement." Employing basic principles of contract law, this court held that the agreement was unenforceable against the liquidator because CGIC was not a party to the agreement. The court noted that while nonsignatories can be bound to an arbitration clause contained within an agreement that they are seeking to enforce,[2] the liquidator was not bound because he was not seeking to enforce any obligations arising from Lucia's employment agreement.

{¶ 51} With respect to Fazekash's agreement, the court noted that it contained a more broadly worded arbitration clause that would encompass the allegations contained in the liquidator's complaint, if the liquidator were bound by it as a successor to a party to the contract. Nonetheless, this court held that enforcement would frustrate the purpose of the liquidation act. Citing the purposes set forth in the liquidation statutes, the court stated:

> To permit Fazekash to have his action decided privately and separately from his fellow officers when the liquidator has disavowed the contract is contrary to the interests of insureds, claimants, creditors, and the public generally as well as the interest of the liquidator who in the pursuit of his duties represents them. 'Enhanced efficiency and economy of liquidation' is not served by allowing Fazekash to have the claims against him heard in a separate forum

---

2. See *Gerig v. Kahn,* 95 Ohio St.3d 478, 2002-Ohio-2581, 769 N.E.2d 381.

with different discovery and evidentiary rules. To permit the officers and directors of a regulated industry to attempt to defeat the liquidation statutes by privately contracting to resolve allegations of corporate mismanagement in a private forum of their own choosing is contrary to the purposes of the liquidation act and prejudicial to the rights of policyholders and creditors who have been harmed by the insolvency of the corporations. Under these circumstances, the general policy favoring arbitration must yield to countervailing policies embodied in the liquidation act. Id. at 416, 784 N.E.2d 186.

{¶ 52} We could not agree more.

{¶ 53} The court in *Lucia* also rejected the argument that the liquidator was bound by the severance agreement because he was the successor to CGIC by virtue of the liquidation proceedings. In reversing the trial court's grant of Fazekash's motion to stay in favor of arbitration, this court stated:

> While this court has recognized the principle that the liquidator stands in the shoes of the insolvent insurer, the liquidation act also confers upon the liquidator special powers to affirm or disavow contracts to which the insurer is a party. See *Covington v. American Chambers Life Ins. Co.*, 150 Ohio App.3d 119, 2002-Ohio-6165, 779 N.E.2d 833; R.C. 3903.21(A)(11). The liquidator has made it abundantly clear that he has no desire to become a successor to Mr. Fazekash's severance agreement and, in·fact, as the trial court noted, the liquidator seeks to disavow the severance agreement. Id.

{¶ 54} Today we apply *Council of Smaller Ents.*, follow and expand upon the rationale of *Lucia,* and expressly overrule *Fabe. Fabe's* reasoning has never been followed by any appellate court, including this one, and after today, it should no longer be followed by the trial courts in Franklin County.

{¶ 55} It is contended by at least one appellee that appellant should be estopped from disavowing the agreements sought to be enforced against her because her disavowal came too late. Our decision in *Covington v. MetroHealth Sys.*, 150 Ohio App.3d 558, 2002-Ohio-6629, 782 N.E.2d 624, discretionary appeal not allowed, 98 Ohio St.3d 1538, 2003-Ohio-1946, 786 N.E.2d 900, is cited in support of this proposition. However, our review of the trial court's decision in that case was limited to whether the three-part test for waiver of privileged documents had been met, and our opinion in that case is, therefore, inapposite.

{¶ 56} In *MetroHealth,* the liquidator sought to recover preference payments from a provider. The provider claimed the liquidator had expressly authorized the settlement agreement under which the payments were made, and that the liquidator had approved the settlement agreement during his period of supervision of the insolvent insurer. The provider sought production of otherwise

statutorily privileged documents in order to prove its estoppel defense. The trial court refused to grant the liquidator a protective order.

{¶ 57} On appeal, the liquidator argued that the documents were not relevant. This court held only that the applicable three-part test for waiver had been satisfied; the liquidator's statutory claim of privilege arose out of its affirmative act of filing a lawsuit, and by filing his lawsuit, the liquidator placed in issue the provider's estoppel defense, making it and the requested documents relevant and no longer privileged. That this court recognized in *MetroHealth* that estoppel may sometimes lie against the state in no way suggests that there exist temporal limitations on a liquidator's power to disavow contracts. We find nothing in the record herein demonstrating that appellant has expressly contracted to arbitrate her claims in the manner that the liquidator in *MetroHealth* was alleged to have contracted with respect to preference payments. The record also fails to disclose that appellant ever acted in a manner inconsistent with her exercise of the right to disavow appellees' contracts.

{¶ 58} The case of *Gerig v. Kahn,* 95 Ohio St.3d 478, 2002-Ohio-2581, 769 N.E.2d 381, cited by appellees, likewise fails to persuade us that estoppel should lie against the liquidator herein. That case stands for the proposition that a nonsignatory can be bound to provisions of an agreement when the nonsignatory seeks a declaratory judgment as to its rights and obligations under the agreement itself.

{¶ 59} However, we view the allegations in appellant's complaint not as seeking a declaration of her rights or obligations under appellees' employment or other agreements, or as an attempt to enforce appellees' obligations thereunder. The claims in this lawsuit do not allege that appellees failed to perform their duties under their employment contracts but rather that they breached fiduciary and statutory duties by, inter alia, signing false quarterly and annual financial statements and concealing material facts regarding the deteriorating financial condition of CGIC and CGIND. Appellant's claims are tort claims for alleged breaches of fiduciary duties which arose as a result of appellees' positions of trust as officers and directors of the corporations, not claims for breach of appellees' employment contracts.

{¶ 60} Appellee Babel argues that to allow appellant to disavow Babel's arbitration agreements would violate the Federal Arbitration Act, Section 1, Title 9, U.S.Code ("FAA"). We disagree. The FAA provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in

equity for the revocation of any contract." Section 2, Title 9, U.S.Code.[3] The FAA's basic purpose is to "ensure judicial enforcement of privately made agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd* (1985), 470 U.S. 213, 219, 105 S.Ct. 1238, 84 L.Ed.2d 158. The FAA "does not mandate the arbitration of all claims, but merely the enforcement—upon the motion of one of the parties—of privately negotiated arbitration agreements." Id. In enacting the FAA, Congress "withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating* (1984), 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1.

{¶ 61} In the present case, our refusal to compel appellant to arbitrate her claims against her will does not run afoul of the FAA. As stated above, under the FAA, arbitration provisions "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Section 2, Title 9, U.S.Code. Appellant's power to disavow pursuant to R.C. 3903.21(A)(11) is a ground that exists at law "for the revocation of any contract." Thus, the liquidator's exercise of the power to disavow, conferred upon her by R.C. 3903.21(A)(11), is not violative of the FAA. See *Southland Corp.*, supra, 465 U.S. at 16, 104 S.Ct. 852, 79 L.Ed.2d 1, fn. 11.

{¶ 62} For all of the foregoing reasons, we sustain appellant's sole assignment of error and hold that she may not be compelled to arbitrate the claims subject of this action without her express consent to same. Accordingly, we reverse the judgment of the Franklin County Court of Common Pleas and remand this case to that court for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

PETREE, P.J., and DESHLER, J., concur.

DANA A. DESHLER, JR., J., retired, of the Tenth Appellate District, was assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.

---

3. This is precisely the same language employed in R.C. 2711.01.