OPINION
{¶ 1} Plaintiff-appellant, Joan von Arras, M.D. ("appellant"), appeals from the August 25, 2004, judgment of the Franklin County Court of Common Pleas, which granted the motion of defendants-appellees, Columbus Radiology Corporation and Michael S. Levey, M.D. ("appellees"), to stay proceedings pending arbitration. For the reasons that follow, we affirm that judgment.
 {¶ 2} In December 2001, appellant, a radiologist, accepted appellees' offer of employment to join their radiology practice. The parties signed a "Letter of Intent" ("the contract"), which formalized the terms of appellant's employment and set forth the obligations of each party. The contract contained a mutual, mandatory, and binding arbitration clause, providing in pertinent part:
13. All claims, disputes, controversies, or disagreements of any kind whatsoever ("Claims") including any claim arising out of or in connection with your employment or the termination of your employment, that may arise between you and CRC, including any claims that may arise between you and CRC's officers, directors, or employees will be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules. The arbitration will be conducted in Columbus, Ohio, at a location mutually agreeable to the parties. It is expressly intended that this provision shall be mutual, and applicable to both CRC and you. Further, it is expressly intended that this arbitration provision shall apply, with limitation, to all employment related disputes, including those claims which relate to matters otherwise protected by state or federal statute or the common law. Accordingly, you and CRC agree to this mandatory and binding arbitration provision for the purpose of resolving such disputes without recourse to a court.
(a) Claims covered by this arbitration provision include, but are not limited to the following:
(i) Alleged violations of federal, state or local constitutions, statutes, regulations, or ordinances, including, but not limited to, antidiscrimination and harassment laws;
(ii) Allegations of a breach of a contractual obligation; and
(iii) Alleged violations of public policy.
(b) The following are expressly excluded from this arbitration provision and are not covered by this Letter:
(i) Claims related to workers' compensation or unemployment Insurance.
(ii) Claims that are expressly excluded by statute or are expressly required to be arbitrated under a different procedure required by CRC's employee benefit plan.
(iii) Claims brought by CRC to enforce the provisions of Paragraph 10 and 11 of this letter, which shall be brought in Common Pleas Court in Franklin County, Ohio.
 {¶ 3} Appellees terminated appellant's employment on January 7, 2003, although she was advised that her last work day would be April 7, 2003. On May 28, 2003, appellant filed a complaint, alleging: breach of contract (count one); a demand for an accounting (count two); wrongful discharge (count three); misrepresentation (count four); age discrimination (count five); and respondeat superior (count six).
 {¶ 4} According to appellant's complaint, appellees agreed to pay appellant an amount equal to 50 percent of the total annual compensation paid to full-time shareholder employees during her first year of employment, but in no event less than $200,000. Appellant claims, however, that appellees paid her significantly less than provided for in the contract. In addition, throughout the duration of appellant's employment, appellees repeatedly pressured appellant to increase the number of patient films she reviewed. Appellant refused to do so, arguing that increasing the speed at which she reviewed patient films would increase the likelihood of misreading a film, thereby, sacrificing the quality of patient care. As a result of her refusal, appellant was counseled regarding her inefficiency, compared with younger members of appellees' medical staff who could perform at the requested rate, and was criticized for voicing concerns relating to patient care. Appellant claims that she was discharged because she refused to compromise patient care in violation of Ohio public policy. Subsequent to her discharge, appellant was replaced by two younger radiologists.
 {¶ 5} Relying on the contract's mandatory and binding arbitration clause, appellees moved to stay the proceedings pending arbitration. Appellant opposed the motion, arguing that the arbitration clause was unenforceable because it would divest the court of its nondelegable power to declare the public policy of the state of Ohio, and because it lacked mutuality.[1]
 {¶ 6} The trial court granted appellees' motion to stay the proceedings pending arbitration. Focusing on the express language of the arbitration clause, and noting the lack of supportive case law for appellant's arguments, the trial court concluded that all of appellant's claims were covered within the scope of the arbitration clause and should be arbitrated.
 {¶ 7} Appellant assigns the following assignment of error:
The trial court erred when it granted the motion to stay proceedings pending arbitration.
 {¶ 8} Although the parties dispute the appropriate standard of review in this case, we find de novo review to be proper. The central issue on appeal is whether an arbitrator has authority or jurisdiction to decide whether appellant was discharged in violation of public policy. Given that resolution of this issue is "a question of law for the court to decide upon an examination of the contract," it is reviewed de novo.Gaffney v. Powell (1995), 107 Ohio App.3d 315, 319-320, citingNationwide Mut. Fire Ins. Co. v. Guman Bros. Farm (1995),73 Ohio St.3d 107, 108. See, also, M C Corp. v. Erwin Behr GMBH Co. (C.A.6, 1998), 143 F.3d 1033, 1037.
 {¶ 9} It is well established that Ohio and federal courts encourage arbitration to settle disputes. ABM Farms, Inc. v. Woods (1998),81 Ohio St.3d 498, citing Kelm v. Kelm (1993), 68 Ohio St.3d 26, 27; andSouthland Corp. v. Keating (1984), 465 U.S. 1, 10, 104 S.Ct. 852. This strong public policy position is further encouraged by the Ohio legislature, as reflected by R.C. 2711.02, which provides in pertinent part "that a court shall stay trial proceedings to allow for arbitration when `an action is brought upon any issue referable to arbitration under an agreement in writing for arbitration * * * upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration * * *.'" R.C. 2711.02(B). Given both the judicial and legislative predisposition to resolving disputes by arbitration, a party opposing a motion to stay proceedings pending arbitration has a heavy burden. Independence Bank v. Erin Mechanical
(1988), 49 Ohio App.3d 17.
 {¶ 10} In this case, appellant's third cause of action is for wrongful discharge in violation of public policy. She claims "Ohio has a public policy which discourages employment practices that adversely affect the quality or availability of medical care to the public." (Complaint at ¶ 27.) Thus, appellant contends appellees violated that public policy when it discharged her for refusing to increase the number of patient films she was to review, when her refusal was based on her belief that any such increase would compromise patient care.
 {¶ 11} Appellant does not claim she entered into the contract as a result of fraud, duress, or unconscionability, and purports that she is not challenging the scope of the arbitration clause. Indeed, she concedes that the arbitration clause at issue "is broad enough to encompass her public policy claim." (Appellant's Reply Brief at 1.) Rather, she argues that the arbitration clause cannot be enforced because resolution of her claims would require the arbitrator to "articulate what is (or is not) the public policy of the State of Ohio" and that is a nondelegable, "inherently judicial function." (Appellant's Brief at 3.)
 {¶ 12} Inherent in the foregoing argument is that the public policy appellees allegedly violated has, thus far, not been recognized in this state. Yet, at the same time, appellant expressly states in her complaint that "[t]his public policy has been repeatedly recognized and reaffirmed by the Courts of Ohio." (Complaint at ¶ 27.) It is axiomatic that the averment in appellant's complaint cannot be reconciled with her argument on appeal. To that end, if we accept the allegation in appellant's complaint as true, and Ohio courts have "reaffirmed and recognized" the alleged public policy at issue, then the arbitrator in this matter would not be deciding the existence of public policy. In that scenario, appellant is, in essence, asking this court to render an advisory opinion. If, however, contrary to appellant's complaint, the alleged public policy at issue does not yet exist, then deciding the issue presented on appeal would not require this court to render an advisory opinion. Given our decision in Mitchell v. Mid-Ohio Emergency Services,
Franklin App. No. 03AP-981, 2004-Ohio-5264, certiorari denied,105 Ohio St.3d 1440, wherein we declined to extend the public policy exception to the employment at-will doctrine to include employees who complain about patient care issues outside the quality assurance chain, we will address the merits of appellant's appeal.
 {¶ 13} "It is well recognized that a clause in a contract providing for dispute resolution by arbitration should not be denied effect unless it may be said with positive assurance that the subject arbitration clause is not susceptible to an interpretation that covers the asserted dispute." Neubrander v. Dean Witter Reynolds, Inc. (1992),81 Ohio App.3d 308, 311. Moreover, "in examining an arbitration clause, a court must bear in mind the strong presumption in favor of arbitrability and resolve all doubts in favor of arbitrability." Id. at 311. Indeed, R.C. 2711.01(A) provides in pertinent part, "[a] provision in any written contract * * * to settle by arbitration a controversy that subsequently arises out of the contract * * * shall be valid * * * except upon grounds that exist at law or in equity for the revocation of any contract." As this court explained in Vibration InstrumentationConsultants, Inc. v. Entek IRD Internatl. Corp. (Mar. 2, 1999), Franklin App. No. 98AP-388, "contracts to arbitrate are not to be avoided by allowing one party to ignore the contract and resort to the courts." Id., citing Southland, supra.
 {¶ 14} In this case, the gravamen of appellant's argument that the arbitration clause should not be enforced is because the arbitrator does not have the authority to decide public policy for the state of Ohio. Appellant does not cite to any legal authority on point to support her argument. Rather, she asserts that this case, by way of analogy, is similar to Kelm, supra (arbitration clause in divorce agreement was invalid because it abrogated the duty owed by the courts to children under the doctrine of parens patriae, and therefore, is contrary to public policy), and Xenia City Bd. of Ed. v. Xenia Ed. Assn. (1977),52 Ohio App.2d 373, 377 (agreement was contrary to the public policy pronounced by the legislature and void because it conflicted with and abrogated the board of education's duties and responsibilities pursuant to R.C. 3313.20, 3313.47, and 3319.08), in that like Kelm and Xenia, the case sub judice falls within the category of claims not subject to arbitration. Based on the fact that neither Kelm nor Xenia involved an employment agreement, we find appellant's reliance on these cases is misplaced.
 {¶ 15} In Belmont County Sheriff v. Fraternal Order of Police (2004),104 Ohio St.3d 568, the Supreme Court of Ohio held at its syllabus that when parties to a contract "have clearly and unmistakably vested the arbitrator with the authority to decide the issue of arbitrability, the question of whether a matter is arbitrable is to be decided by the arbitrator." In this case, the arbitration clause states "any claims that arise before you and [appellees] will be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules." (Contract at ¶ 13.) According to Rule 7 ("Rule 7") of the Commercial Arbitration Rules, "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." When, as here, the parties explicitly incorporate rules, including Rule 7, which empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator. See, e.g., Citifinancial, Inc. v. Newton (S.D.Miss. 2005),359 F.Supp.2d 545; Bayer Cropscience, Inc. v. Limagrain Genetics Corp.
(N.D.Ill. 2004), 2004 U.S. Dist. LEXIS 25070; Professional Sports Tickets Tours, Inc. v. Bridgeview (E.D.Pa. 2001), 2001 U.S. Dist. LEXIS 14402. Thus, consistent with the express language of Rule 7, it is for the arbitrator, and not the courts, to decide whether the parties have an agreement for arbitration that encompasses the dispute between them. This conclusion is further buttressed by paragraph 13(a)(iii) of the contract, which provides that the arbitration clause applies to any "[a]lleged violations of public policy."
 {¶ 16} The law permits parties to voluntarily waive a number of important legal rights, and such a waiver will be deemed invalid only if it violates public policy. Sanitary Commercial Services, Inc. v. Shank
(1991), 57 Ohio St.3d 178, 180-181; Kelm, supra. Thus, "courts are usually quite reluctant to relieve parties of the consequences of these choices." Kelm, supra. Herein, we find appellant waived any right to resort to the courts when she agreed to the terms in the contract. Appellant has cited no case, nor did the independent research of this court disclose any legal authority, to suggest that appellant's waiver of rights violated any public policy.
 {¶ 17} In fact, a recent case from the Seventh District Court of Appeals reached the same conclusion as we do herein. In Robbins v. CountryClub Retirement Center, IV, Inc. (Mar. 17, 2005), Belmont App. No. 04 BE 43, 2005-Ohio-1338, the court noted that while the Supreme Court of Ohio opined in Painter v. Graley (1994), 70 Ohio St.3d 377, 383-384, that it had "confidence that the courts of this state" were capable of determining whether a discharge violated a clear public policy, nowhere in that opinion did the Supreme Court entrust only courts with that task. The Robbins court explained:
It is language such as that emphasized supra that leads appellant to conclude that an arbitrator cannot be entrusted with the job of determining whether a sufficiently clear public policy exists. True, the Court's language often refers to the decision of courts. However, the Supreme Court was not confronted with the context of arbitration in that case. Thus, its language does not require an interpretation which excludes an arbitrator from determining whether a sufficiently clear public policy exists.
It should be noted here that R.C. 2711.10 and 2711.11 severely limit the court's review of an arbitrator's decision. It is often stated that an agreement to arbitrate carries with it the willingness to accept an arbitrator's decision regardless of whether it is factually or legally correct. Stehli v. Action Custom Homes, Inc. (2001), 144 Ohio App.3d 679,682, 761 N.E.2d 129 (11th Dist.), citing Goodyear Tire Rubber Co.v. Local Union No. 200 (1975), 42 Ohio St.2d 2d 516, 522, 330 N.E.2d 703.
Under this rationale, it seems irrelevant that it is a court who typically determines whether a public policy exception to the employment at-will doctrine should be created. Appellant waived any right to have a court decide the issue. By her own choice, i.e., by signing the arbitration agreement, she effectively submitted her claim to arbitration. The arbitrator's decision would only be creating the public policy decision in that case and such occurrence is the whole point of arbitration, avoiding the technicalities of the court system and allowing an arbitrator to engage in his or her own version of dispute resolution.
Contrary to appellant's argument, the Supreme Court's decision that child custody and visitation are not subject to arbitration does not shed light on the issue in the case before us. See Kelm v. Kelm (2001),92 Ohio St.3d 223, 2001 Ohio 168, 749 N.E.2d 299 (noting that the courts allowing arbitration on this topic later use a de novo review, finding this to be a waste of time and resources, and reminding that the court is obligated to protect the child's best interests). Moreover, enforcement of the arbitration agreement does not "impinge upon a broad statutory scheme that invests sweeping powers in a state official" as was the case in the appellate decision relied upon by appellant for his conclusion that enforcement of the public policy exception to the at-will employment doctrine would itself violate public policy. See Benjamin v. Pipoly
(2003), 155 Ohio App.3d 171, 183, 2003 Ohio 5666, 800 N.E.2d 50
(dealing with the Superintendent of Insurance and liquidators of insolvent insurers). Here, there is no state official required as a party, there are no allegations that a non-signatory would be subject to arbitration, and there is no broad statutory scheme governing the proceedings of this case. This argument is overruled.
Id., at ¶ 60-63.
 {¶ 18} Based on the foregoing, we find that appellant clearly agreed to submit all employment disputes to arbitration when she agreed to the terms of employment set forth in the contract. In addition, Rule 7 of the Commercial Arbitration Rules confers upon the arbitrator the power to decide her own jurisdiction, including any objections thereto. As such, the trial court was required, under R.C. 2711.02, to issue a stay of proceedings. Accordingly, appellant's assignment of error is overruled and the judgment of the Franklin County Common Pleas Court is affirmed.
Judgment affirmed.
Bryant and Petree, JJ., concur.
[1] This argument was not raised on appeal.