OPINION *Page 2 
{¶ 1} Defendant-appellant, John Hancock Life Insurance Company, appeals from a judgment of the Franklin County Court of Common Pleas in favor of plaintiff-appellee, Mary Jo Hudson, the Ohio Superintendent of Insurance, in her capacity as liquidator for Credit General Insurance Company and Credit General Indemnity Company (hereinafter collectively "Credit General").
 {¶ 2} The parties are before us for the second time, and the circumstances of the case were generally set forth in our prior decision. Benjamin v. Credit Gen. Ins. Co., Franklin App. No. 04AP-642,2005-Ohio-1450. The sole issue presented in the present appeal is whether the provisions of the Ohio Insurer's Supervision, Rehabilitation, and Liquidation Act, R.C. Chapter 3903, preclude enforcement of arbitration clauses against the Superintendent of Insurance functioning as liquidator of an insolvent insurer, when those arbitration provisions are part of a contract that the liquidator otherwise seeks to enforce. We find that they do.
 {¶ 3} The heart of this matter is a dispute between the liquidator and John Hancock over amounts potentially owed by John Hancock under 13 reinsurance agreements pursuant to which John Hancock reinsured risks initially insured by the now-insolvent Credit General. The liquidator asserts that John Hancock's potential reinsurance obligations may exceed $100,000,000, and that Credit General's rights under these reinsurance agreements constitute the principal asset of the insolvent insurer's estate.
 {¶ 4} Litigation over the reinsurance agreements began with a lawsuit filed by Credit General in 1999 in the Federal District Court for the Northern District of Ohio *Page 3 
alleging breach of contract and bad faith claims against John Hancock under one (and only one) of the reinsurance contracts. John Hancock invoked the arbitration clause in the reinsurance agreement and the district court eventually granted John Hancock's motion to dismiss Credit General's complaint. Credit General Ins. Co. v. John Hancock Mut.Life Ins. Co. (May 30, 2000), N.D. Ohio No. 1:99CV02690. The parties proceeded to arbitrate this limited aspect of the matter.
 {¶ 5} Within a year, Credit General went into liquidation and the Superintendent, as liquidator, continued the arbitration process until 2003, when this court decided Benjamin v. Pipoly, 155 Ohio App.3d 171,2003-Ohio-5666, a case also involving Credit General but concerning employment disputes with former Credit General executives and thus not directly related to the present reinsurance dispute. In Pipoly, we held that the liquidator could not be bound by a pre-liquidation contractual obligation of the insurer to resolve employment disputes in arbitration.
 {¶ 6} Based on Pipoly, the liquidator abandoned arbitration with John Hancock over reinsurance issues and filed the present action in the Franklin County Court of Common Pleas alleging breach of contract and bad faith claims on all 13 reinsurance agreements, including the one that had been the subject of the 1999 federal lawsuit in the Northern District of Ohio. John Hancock initially attempted to remove the liquidator's new action from the Franklin County Court of Common Pleas to federal court, but both the Southern District and Northern District declined jurisdiction. Benjamin v. John Hancock Fin. Serv., Inc. (Aug. 18, 2004), S.D.Ohio No. 2:04-CV-00184; Credit General Ins. Co. v. JohnHancock Mut. Life Ins. Co. (Mar. 29, 2005), N.D.Ohio No. 1:99CV2690. John Hancock then filed a motion in the court of common pleas for dismissal or a stay pending *Page 4 
arbitration, arguing that the liquidator was obligated under the reinsurance agreement arbitration provisions and the Northern District's original May 30, 2000 order to resume the arbitration process.
 {¶ 7} Applying our decision in Pipoly, the trial court overruled the motion for stay and referral to arbitration, and the present appeal ensued. John Hancock brings the following three assignments of error:
 1. The trial court erred in refusing to enforce the arbitration provisions contained in the John Hancock reinsurance contracts, when the Liquidator has assumed the contracts and is suing on them.
 2. The trial court erred in ruling that an arbitration provision is a separate contract within the reinsurance contract containing it, and that the Liquidator can accept or reject the arbitration provision independently of the reinsurance contract.
 3. The trial court erred in refusing to employ res judicata and collateral estoppel to compel the Liquidator to arbitrate these disputes, when Credit General had already litigated the same arbitration issue in federal court and lost.
 {¶ 8} A trial court's decision granting or denying a stay of proceedings pending arbitration is a final appealable order, R.C.2911.02(C), and is subject to de novo review on appeal with respect to issues of law, which commonly will predominate because such cases generally turn on issues of contractual interpretation or statutory application. Peters v. Columbus Steel Castings Co., Franklin App. No. 05AP-308, 2006-Ohio-382, ¶ 10. In Peters, we resolved a split in precedent both within prior decisions of this court and from other appellate districts over whether our review should be de novo or under an abuse-of-discretion standard, recognizing the predominance of legal issues inherent in this type of appeal. West v. Household Life Ins.Co., Franklin App. No. 06AP-906, 2007- *Page 5 
Ohio-845, ¶ 7. We accordingly have abandoned the more deferential abuse-of-discretion standard with respect to contractual interpretation expressed in older decisions of this court. See, e.g., Cronin v. Cal.Fitness, Franklin App. No. 04AP-1121, 2005-Ohio-3273.
 {¶ 9} John Hancock's first two assignments of error present intertwined issues and will be addressed together. Because the liquidator argues that Pipoly and the public policy considerations reflected therein mandate the conclusion reached by the trial court, and because John Hancock argues to the contrary that Pipoly must be either overruled or distinguished, we will develop the facts and holding of that case in some detail as a precursor to discussion.
 {¶ 10} In Pipoly, the Superintendent of Insurance as liquidator brought suit against former directors and officers of the insolvent insurer, asserting breach of their fiduciary duties to the company. The defendant directors and officers argued that the liquidator's claims were subject to the arbitration clauses in the defendant's employment agreements. (The liquidator had repudiated the employment agreements in their entirety.) This court held that the liquidator could not be compelled to arbitrate under the employment agreement provisions because the objectives of Ohio's Liquidation Act would be impermissibly impaired by imposition of a duty to arbitrate. We first noted that the act should be liberally construed to achieve its specific purpose:
 Ohio's statutory insurance liquidation scheme is abounding in features designed to vest within the liquidator broad and largely unfettered powers, under the supervision of the courts, to maximize the assets available to her in discharging her duties to claimants, shareholders, and creditors of the insolvent insurance company. The statutes require us to liberally construe them in favor of their stated purpose.
Id. at ¶ 28. *Page 6 
 {¶ 11} We rejected the defendant's argument that the liquidator, as successor in interest, stood in the shoes of the insolvent insurer and was bound by the employment agreements and their included arbitration clauses. We found that the liquidator, as a creature of statute, was not in the position of a simple successor in contractual interest:
 * * * [W]here, as here, private arbitration impinges upon a broad statutory scheme that invests sweeping powers in a state official, enforcement of arbitration ipso facto violates public policy. Though [the liquidator] takes the place of the insolvent insurer for all practical purposes, it is clear from the statutory scheme that the General Assembly did not contemplate turning over the administration of liquidation proceedings and incidental actions to private arbitrators in forums shielded from public scrutiny, judicial review of which would be sharply limited. * * *
Id. at ¶ 40.
 {¶ 12} Finally, we rejected the argument that application of the Federal Arbitration Act, Section 1, Title 9, U.S. Code et seq. ("FAA"), which mandates enforcement of valid arbitration clauses, would prevent the liquidator from avoiding arbitration in the employment dispute. We noted that under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Section 2, Title 9, U.S. Code. We found that our application of the Liquidation Act conferred upon the liquidator a grounds at law for repudiation of the arbitration clauses, and was thus not violative of the FAA. Pipoly, at 61. As a result, we held, the liquidator could not be forced to arbitrate under the language in the employment agreement with the former officers and directors of the insolvent insurer.
 {¶ 13} John Hancock initially argues that Pipoly must simply be overruled as wrongly decided on the question of whether the purposes and policies embodied in the *Page 7 
Ohio Liquidation Act outweigh the general public policies in favor of arbitration set forth in state and federal statutes, pointing out that Ohio courts have long recognized that both the FAA and the Ohio Arbitration Act, R.C. Chapter 2711, reflect a strong public policy favoring arbitration of disputes and enforcement of valid arbitration agreements. Counsel of Smaller Ents. v. Gates, McDonald Co. (1998),80 Ohio St.3d 661, 669. John Hancock accurately points out thatPipoly stands in the minority of cases addressing the interplay between contractual obligations to arbitrate and the statutory rights of an insurance liquidator. See, e.g., Bennett v. Liberty Natl. Fire Ins.Co. (C.A.9, 1992), 968 F.2d 969; Schacht v. Beacon Ins. Co. (C.A. 7, 1984), 742 F.2d 386; Ainsworth v. Allstate Ins. Co. (W.D.Mo.1985),634 F.Supp. 52; Bernstein v. Centaur Ins. Co. (S.D.N.Y.1984),606 F.Supp. 98; Nichols v. Vesta Fire Ins. Corp. (E.D.Ky. 1999), 56 F.Supp.2d 778.
 {¶ 14} While we acknowledge the divergence of opinion, our decision inPipoly fully weighed this public policy in favor of arbitration against the specific statutory scheme addressing the powers and duties of a court-appointed liquidator of an insolvent insurance company, finding that the state's "paramount interest in seeing that liquidation proceedings conducted by a court-appointed liquidator and overseen by their courts are free from the interference of outside agencies" overrode the presumption in favor of enforcing an arbitration clause.Pipoly, at ¶ 41, quoting Blackhawk Heating Plumbing Co. v.Geeslin (C.A. 7, 1976), 530 F.2d 154. We then reiterated this assessment of the competing public interests when subsequently called upon to revisit Pipoly: "Strong policies embodied in Ohio's insurance liquidation statutes regarding the state's interest in centralizing claims and defenses raised against an insolvent insurer into a single forum outweigh the general policy favoring arbitration as a means of settling disputes." *Page 8 Benjamin v. Credit General, 2005-Ohio-1450, at ¶ 9. We are accordingly unwilling to revisit our holding in Pipoly for the simple purpose of reweighing the public policy analysis therein.
 {¶ 15} John Hancock also argues that Pipoly incorrectly failed to recognize that the FAA would compel arbitration in such cases. The FAA, as does the Ohio Arbitration Act, provides that a written agreement to arbitrate in a contract involving interstate commerce will be enforced, and that state courts are bound to apply the FAA when faced with a valid arbitration clause. Southland Corp. v. Keating (1984), 465 U.S. 1,16-17, 104 S.Ct. 860-61. ("Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements.") Because the FAA is specifically intended to avoid inconsistent state legislation resulting in disparities from state to state in the enforcement of arbitration clauses, John Hancock argues, the reasoning of Pipoly in invoking Ohio's Liquidation Act is insufficient of itself to overcome the explicit enforcement of arbitration under the FAA.
 {¶ 16} Expanding upon our reasoning in Pipoly, we find that the liquidation of insurance companies under state law does not fall under the otherwise-broad reach of the FAA. The application in this case of the FAA is "reverse-preempted" by the Ohio Liquidation Act because Congress has specifically held through the McCarran-Ferguson Act that state statutes will supersede conflicting applicable federal statutes when regulating the insurance industry. Section 1012(B), Title 15, U.S.Code.; U.S. Dept. of Treasury v. Fabe (1993), 508 U.S. 491,113 S.Ct. 2202; Munich American Reins. Co. v. Crawford (C.A.5, 1998),141 F.3d 585, 590, 525 U.S. 1016. The purpose of the McCarran-Ferguson Act is to insure that states retain the primary role in regulating *Page 9 
insurance, and the act operates to preempt application of federal law where such application would "invalidate, impair or supersede" state laws that regulate the business of insurance. Section 1012(b), Title 15, U.S.Code; Suter v. Munich Reins. Co. (C.A.3, 2000), 223 F.3d 150,160-62. Under the McCarran-Ferguson Act, a federal statute is reverse-preempted if (1) it does not specifically relate to the business of insurance; (2) the state statute was enacted for the purpose of regulating the business of insurance; and (3) the federal statute would invalidate, impair, or supersede the state statute. U.S. Dept. ofTreasury v. Fabe, 508 U.S. at 501.
 {¶ 17} The Ohio Liquidation Act expressly provides that claims involving liquidation of an insolvent insurer will be asserted in the liquidation court. R.C. 3903.04(E); R.C. 3903.04(C)(2). Under our interpretation of these statutory provisions, exercising our duty to interpret and apply Ohio law, we have held in Pipoly that the liquidator cannot be compelled to arbitrate. This is a specific provision governing regulation of the business of insurance, and falls squarely under the reverse preemption set forth in McCarran-Ferguson. See, generally,Benjamin v. Credit Gen. Ins. Co., 2005-Ohio-1450. Conversely, the FAA is not a federal statute specifically governing the business of insurance. Finally, as we found in Pipoly, application of a duty to arbitrate would substantially impair the effective application and essential purposes of the Liquidation Act. We accordingly find that this situation calls for reverse preemption of the FAA under McCarran-Ferguson, and the FAA does not compel arbitration in the present case.
 {¶ 18} John Hancock further argues that, if Pipoly is not to be overruled, it must be distinguished because the contracts inPipoly had been disavowed in toto by the liquidator, unlike the present case, where the Liquidator seeks to enforce the reinsurance *Page 10 
rights of the insolvent insurer against John Hancock, while invalidating the arbitration clause. John Hancock argues that it is inconsistent to allow the liquidator to accept the benefits of the reinsurance agreements while renouncing inconvenient portions thereof.
 {¶ 19} This is not a permissible reading of our holding inPipoly. Arbitration clauses may be severed from the underlying contract if unenforceable. Ignazio v. Clear Channel Broadcasting Inc.,113 Ohio St. 3d 276, 2007-Ohio-1947. Pipoly clearly states that private arbitration conflicts with and undermines the policies and procedures set forth in the Ohio Liquidation Act, and arbitration clauses are consequently unenforceable against the liquidator. This does not create a corollary that the liquidator is thereby obligated to relinquish all rights in any contract held by the insolvent insurer that contains an arbitration clause.
 {¶ 20} Under Ohio law, the rights of action of the insolvent insurer are assets of the liquidation estate. Pipoly at ¶ 24; R.C. 3903.18(A). Under John Hancock's limited interpretation of Pipoly, the liquidator would be compelled to choose between relinquishing all rights under the reinsurance agreements representing the greater portion of the Credit General estate, or arbitrating the dispute. The liquidator would thus be left only with the choice of repudiating arbitration clauses in contracts that no longer promised any benefit to the estate, and accepting arbitration in all other cases. The general premise of the holding in Pipoly, that arbitration must yield to the public purposes of the Liquidation Act, would be only insignificantly served by such a limited interpretation. The liquidator would be unable to proceed in the liquidation court against any asset or contractual right containing an arbitration clause. *Page 11 
 {¶ 21} We are unable to agree with the line of cases cited by appellant for the proposition that actions by the liquidator to enforce contractual rights must be distinguished from actions brought by creditors against the insurance estate. See, e.g., Bennett andNichols, supra, and Midwest Emp. Cas. Co. v. Legion Ins. Co. (Nov. 7, 2007), E.D.Mo. No. 4:07CV870CDP. (In Bennett, 968 F.2d at 971, the Ninth Circuit went so far as to state that once an insurer enters liquidation, applicable state liquidation statutes no longer "regulate the business of insurance," and will no longer supersede conflicting federal statutes under McCarran-Ferguson, an even more tenuous proposition that certainly does not survive U.S. Dept. of Treasury v. Fabe's examination of the primacy of Ohio's liquidation preferences, 508 U.S. at 509-10,113 S.Ct. at 2211-12.) To the contrary, under Ohio's Liquidation Act the marshalling of assets in liquidation court for the benefit of the insolvent insurer's estate is as vital a role for the liquidator as defense against or payment of claims against that estate, and any attempt to elevate one function above the other merely creates a distinction without a difference.
 {¶ 22} Moreover, in Pipoly this court expressly overruled our prior decision in Fabe v. Columbus Ins. Co. (1990), 68 Ohio App.3d 226, which was itself a case addressing contractual rights under a reinsurance agreement. In expressly overruling Fabe, this court manifestly expressed an intent, which the trial court in the present case has scrupulously followed, that Pipoly should be applied in instances in which the liquidator is attempting to obtain benefits under a reinsurance agreement while repudiating an arbitration clause that conflicts with the purposes and policies of the Liquidation Act.
 {¶ 23} In accordance with the foregoing, we find that the trial court did not err in applying Pipoly to the present facts, both because we continue to adhere to the analysis *Page 12 
set forth in Pipoly regarding the interaction between contractual arbitration clauses, the Ohio Liquidation Act, and the FAA, and because we find the holding in Pipoly applicable to actions by the liquidator to recover under reinsurance agreements. Appellant's first and second assignments of error are overruled.
 {¶ 24} Appellant's third assignment of error argues that the decision of the Franklin County Court of Common Pleas was precluded based upon previous federal court decisions in companion cases. The aspect of res judicata invoked is that of issue preclusion, which precludes the relitigation of an issue actually and necessarily litigated and determined in a prior action between the parties or their privies.Columbus v. Triplett (1993), 91 Ohio App.3d 239, 243.
 {¶ 25} John Hancock argues that, because the Northern District of Ohio in 2000 found that arbitration must be compelled with respect to one of the reinsurance agreements between John Hancock and Credit General, the liquidator, as successor and privy to Credit General, should be bound to that result, not only as to the reinsurance agreement at issue in the 2000 case but all related agreements. Fatal to this position is the fact the Northern District has already rejected this res judicata argument in a subsequent decision. When John Hancock attempted to return the matter to federal jurisdiction in 2005, the court expressly held that its prior decision was not binding on the question of whether the liquidator as successor to Credit General could be compelled to arbitrate: "As the Liquidator points out, this Court did not decide the question of whether, and to what extent, the Liquidator can be compelled to arbitrate the disputes at issue in that case. That question, which involves an interpretation of state law and a consideration of the interplay between that state law and the FAA, was never presented *Page 13 
to this Court." Credit General Ins. Co. v. John Hancock Mut. Life Ins.Co. (N. D. Ohio, Mar. 29, 2005), slip opinion, at 10. While our own independent analysis regarding the application of McCarran-Ferguson reverse pre-emption to this context leads to the same result, the express decision of the Northern District of Ohio buttresses our conclusion that it is the province of Ohio courts to decide whether Ohio law has invalidated the arbitration clauses. We accordingly reject all res judicata arguments presented by John Hancock, and John Hancock's third assignment of error is overruled.
 {¶ 26} In summary, John Hancock's three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas overruling John Hancock's motion to stay proceedings and to compel arbitration in this matter is affirmed.
Judgment affirmed.
BRYANT and KLATT, JJ., concur.
DESHLER, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 1