HUDSON, Supt., Appellee,

v.

ERNST & YOUNG, L.L.P., Appellant, et al.

[Cite as *Hudson v. Ernst & Young, L.L.P.*, 189 Ohio App.3d 60, 2010-Ohio-2731.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 09AP–949.

Decided June 15, 2010.

Richard Cordray, Attorney General; Kegler Brown Hill & Ritter Co., L.P.A., Melvin D. Weinstein, R. Kevin Kerns, Jennifer L. Mackanos, and Richard W. Schuermann Jr., for appellee.

Squire, Sanders & Dempsey L.L.P., John R. Gall, and Aneca E. Lasley; Mayer Brown, L.L.P., Stanley J. Parzen, and Daniel J. Hildebrand, for appellant.

SADLER, Judge.

{¶ 1} Defendant-appellant, Ernst & Young, L.L.P., appeals from the judgment of the Franklin County Court of Common Pleas in which that court denied appellant's motion to dismiss or, in the alternative, to stay and compel arbitration

in this action brought by plaintiff-appellee, Mary Jo Hudson, in her capacity as liquidator of the American Chambers Life Insurance Company.

{¶ 2} The following facts are taken from the record and are undisputed unless otherwise noted. American Chambers Life Insurance Company, was a life-, accident-, and health-insurance company that transacted business in Ohio. Appellant, an independent accounting firm, audited American Chambers' financial statements for the year ending December 31, 1998, and, on February 25, 1999, submitted a report to the Ohio Department of Insurance ("ODI") certifying that it had conducted its audit in accordance with generally accepted auditing standards and that American Chambers' financial statements presented fairly, in all material respects, American Chambers' financial position.

{¶ 3} Appellant provided its auditing services pursuant to an engagement letter, which provided that appellant would audit and report on American Chambers' financial statements, that the objective of the audit was to express an opinion on the fairness, in all material respects, of the presentation of the financial statements in conformity with generally accepted accounting principles or those prescribed or permitted by ODI, and that appellant would conduct the audit in accordance with generally accepted auditing standards. The engagement letter included an arbitration clause.[1]

{¶ 4} On March 13, 2000, appellee filed an action in the Franklin County Court of Common Pleas, seeking to place American Chambers into rehabilitation. On May 8, 2000, that court issued a final order of liquidation. The final order determined that American Chambers was insolvent under Ohio's regulatory statutes and appointed appellee as liquidator.

{¶ 5} The liquidation proceeded, and on May 2, 2002, appellant and appellee entered into a tolling agreement, under which the parties agreed that for a tolling period of one year from May 2, 2002, "the Liquidator may forbear and postpone the filing, commencement and prosecution of any and all claims or causes of action it may have against [appellant]." The parties likewise agreed that appellant could postpone, for one year from the effective date of the agreement, the pursuit of any claims "arising out of accounting or auditing services provided by [appellant] to [American Chambers]" or "arising out of transfers of monies or other property from [American Chambers] to [appellant]." The parties agreed that any such claims filed by either party during the tolling period "shall not be deemed time barred if such lawsuit or claim was not time barred as of the Effective Date [of the tolling agreement]." The parties further agreed that

---

1. The parties dispute whether American Chambers was actually a signatory to the engagement letter or whether its parent company, United Chambers, was the signatory and only party other than appellant. This dispute is inconsequential to our analysis.

"[appellant] may otherwise assert, as defenses to any lawsuit or claim the Liquidator may file against [appellant], all defenses that [appellant] has as of the Effective Date, including but not limited to the statute of limitations." In addition, the parties agreed that appellee could assert "as defenses to any lawsuit or claim [appellant] may file against [American Chambers], all defenses that [American Chambers] has as of the Effective Date, including but not limited to the statute of limitations."

{¶ 6} On April 30, 2003, appellee commenced the present action against appellant. In its complaint, appellee alleged that contrary to appellant's duty under applicable provisions of the Ohio Administrative Code, and contrary to the assertions in appellant's February 25, 1999 report, appellant failed to properly audit American Chambers' financial statements in accordance with generally accepted auditing standards and failed to discover or disclose material misstatements in those financial statements. Appellee asserted two claims against appellant: (1) that appellant negligently failed to perform its duties as the independent certified public accountant retained to conduct the audit of American Chambers' December 31, 1998 annual statement and (2) that appellant accepted a $25,000 preferential or fraudulent payment from American Chambers in contravention of Ohio law.[2]

{¶ 7} On July 15, 2003, appellant moved to dismiss the complaint or to stay and compel arbitration of appellee's claim. Appellant based its motion upon the arbitration clause in the engagement letter between appellant and American Chambers, which provided that "[a]ny controversy or claim arising out of or relating to the services covered by this letter or hereafter provided by us to the Company * * * shall be submitted first to voluntary mediation, and if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures set forth in the attachment to this letter."

{¶ 8} Appellant argued that pursuant to this court's decision in *Fabe v. Columbus Ins. Co.* (1990), 68 Ohio App.3d 226, 587 N.E.2d 966, the negligence claim appellee filed against appellant was subject to the arbitration clause. In *Fabe*, this court held that an arbitration clause in a reinsurance agreement was binding upon the court-appointed liquidator of an insolvent insurance company. *Fabe* involved the liquidator's attempt to recover money from the reinsurers that was allegedly owed to the insolvent insurer. The reinsurers moved to compel arbitration. The liquidator objected, claiming that he was not subject to the

---

2. Appellee's complaint also included claims against the law firm of Foley & Lardner and one of the firm's partners, Michael H. Woolever. Those claims are not at issue in the instant appeal.

arbitration clause and that the trial court had exclusive jurisdiction over any and all disputes arising in the course of the liquidation proceedings.

{¶ 9} This court noted that the modern trend in the law was to favor and encourage arbitration and that nothing in the liquidation statutes prohibits arbitration. Accordingly, we held that if possible, the liquidation and arbitration statutes should be construed as to give effect to both. We determined that "only if compelling arbitration would somehow interfere with the liquidator's powers under R.C. 3903.18 and 3903.21 could such a contractual arbitration provision be held unenforceable in liquidation proceedings." Id. at 233, 587 N.E.2d 966.

{¶ 10} We further stated that because any money the liquidator might recover in its action against the reinsurers was not part of the liquidation estate until the dispute was resolved, that money was not an asset of the liquidation estate. "While it is true that the resolution of the dispute will have an impact on the amount of money plaintiff [the liquidator] has to pay the creditors of [the insolvent insurer], arbitration of that dispute will not adversely affect any party to the liquidation proceeding." Id., 68 Ohio App.3d at 236, 587 N.E.2d 966. Finding that prosecuting a claim for money damages through arbitration "will not affect the priority of claims of creditors," this court affirmed the trial court's order compelling arbitration.

{¶ 11} Appellant argued that *Fabe* controlled the instant matter because the negligence claim appellee asserted against it was not one that the liquidation statutes were designed to resolve and was not based upon the insurance code; rather, the claim was based upon appellant's obligations under the engagement letter. Appellant maintained that, as in *Fabe*, appellee was merely attempting to recover money allegedly owed to American Chambers. Appellant argued that, although resolution could affect the amount of money appellee would have to pay American Chambers' creditors, arbitration of the claim would not prejudice the priority of the rights of creditors.

{¶ 12} On August 19, 2003, appellee filed a response to appellant's motion, arguing that she was not bound by the arbitration clause in the engagement letter because the negligence claim appellee asserted against appellant was completely independent of any duties established under the engagement letter. Appellee contended that her complaint alleged that appellant failed to perform its auditing duties in a manner consistent with its obligations under Ohio law and its written representations to ODI. Appellee maintained that *Fabe* was inapplicable because in that case, the liquidator sought to enforce the agreement containing the arbitration clause, whereas in the instant case, appellee was not seeking to enforce any agreement at all, much less one containing an arbitration clause.

{¶ 13} While the motion was still pending in the trial court, this court released its decision in *Benjamin v. Pipoly*, 155 Ohio App.3d 171, 2003-Ohio-5666, 800

N.E.2d 50. In *Pipoly*, the liquidator of two insolvent insurance companies instituted an action against the directors and officers of the insolvent insurers for breach of fiduciary duties. Each of the directors and officers had an employment agreement that contained an arbitration clause. The directors and officers moved the trial court to stay the action and refer the liquidator's claims to arbitration. They argued that the liquidator should be deemed to have agreed to arbitration, even though the liquidator had not actually executed any of the employment agreements. They maintained that the liquidator stood in the shoes of the insolvent insurers and, as such, was bound by any provision in their employment agreements, including the arbitration provisions contained therein, to which the insolvent insurers would be bound. Id. at ¶ 15. They further argued that to give effect to the arbitration provision in their employment contracts would not affect the priority of creditors of the liquidation estate, nor would any party to the liquidation be prejudiced. The trial court, relying on this court's decision in *Fabe*, concluded that it should give effect to both the liquidation statutes and the arbitration clauses and sustained the motions to stay and refer to arbitration.

{¶ 14} On appeal, the liquidator argued that the arbitration clauses were unenforceable against her because she was not a party to the employment agreements and she expressly disavowed them pursuant to R.C. 3903.21(A)(11). In response, the directors and officers argued that although the liquidator was not a signatory to the employment agreements, she should be bound by the arbitration language contained therein because the insolvent insurers—the entities on whose behalf she was appointed the liquidator—were bound by them and remain so. They further argued, relying on *Fabe*, that the liquidator's power to disavow contracts should not operate to nullify the arbitration clauses so long as enforcement of the clauses would not affect the priority of creditors of the liquidation estate or adversely affect any party to the liquidation. In response, the liquidator argued that strong policies embodied within Ohio's insurance liquidation statutes outweighed the general policy favoring arbitration as a means of settling disputes.

{¶ 15} This court conducted a thorough examination of Ohio's statutory scheme governing insurance company liquidations, concluding that the scheme was "abounding in features designed to vest within the liquidator broad and largely unfettered powers, under the supervision of the courts, to maximize the assets available to her in discharging her duties to claimants, shareholders, and creditors of the insolvent insurance company." *Pipoly*, 155 Ohio App.3d 171, 2003-Ohio-5666, 800 N.E.2d 50, at ¶ 28. In particular, this court noted that R.C. 3903.18(A) vests broad powers in the liquidator regarding the insolvent insurer's assets, including the title to all of the property, contracts, and rights of action of

the insolvent insurer, as of the entry of the final order of liquidation. In addition, we noted that R.C. 3903.21(A) contains a nonexclusive list of enumerated powers vested in the court-appointed liquidator, including, pursuant to R.C. 3903.21(A)(11), the power to enter into contracts necessary to carry out the order to liquidate and to affirm or disavow any contracts to which the insolvent insurer is a party. Id. at ¶ 27.

{¶ 16} We next analyzed Ohio's statutory provisions and pertinent case law governing arbitration. We noted that in general, parties to an action are not required to submit their claims to arbitration unless the parties previously agreed in writing to arbitrate their disputes, and, therefore, where a party resisting arbitration is not a signatory to a written agreement to arbitrate, a presumption against arbitration arises. Id., 155 Ohio App.3d 171, 2003-Ohio-5666, 800 N.E.2d 50, at ¶ 36. Applying these principles, we concluded that since the liquidator had not signed the employment agreements, a presumption against arbitration existed that the directors and officers had not and could not sufficiently rebut, "particularly in light of the strong policy considerations embodied within Chapter 3903 of the Ohio Revised Code, that vest broad powers both in the liquidator and in the courts." Id. at ¶ 37. We explained: "A liquidator emanates from an order of the court and acts as an arm or extension of the court. A liquidator is appointed to perform specific functions, including preserving and maximizing the value of the insolvent insurer and protecting the interests of both those with direct pecuniary connections to the insurer and the general public. The liquidator must have freedom of action to do those acts most beneficial in achieving her objectives. Within this demesne, the liquidator may affirm or disavow the rights and obligations of the interest with which she is charged, and it would be inconsistent to compel arbitration against her when such an obligations predates her appointment." Id. at ¶ 38.

{¶ 17} Accordingly, we held that "when a liquidator is appointed by court order * * *, she is not automatically bound by the pre-appointment contractual obligations of the insurer. To be so bound, the liquidator must affirmatively indicate her election to be responsible for the prior obligations of the former operators." Id., 155 Ohio App.3d 171, 2003-Ohio-5666, 800 N.E.2d 50, at ¶ 39. We concluded that because the liquidator was never a party to the employment contracts and there was nothing in the record to demonstrate that she adopted any of the agreements and expressly assumed the liabilities contained therein, the arbitration provisions within the agreements could not be enforced against the liquidator. Id.

{¶ 18} We further held that "where * * * private arbitration impinges upon a broad statutory scheme that invests sweeping powers in a state official, enforcement of arbitration ipso facto violates public policy. * * * [I]t is clear from the

statutory scheme that the General Assembly did not contemplate turning over the administration of liquidation proceedings and incidental actions to private arbitrators in forums shielded from public scrutiny, judicial review of which would be sharply limited. Without express statutory authorization, we cannot say that the legislature intended that arbitrators, subject to selection by the parties themselves and charged with the execution of no public trust, would determine such matters." Id. at ¶ 40.

{¶ 19} Additionally, we stated that "[t]he structure of Ohio's system serves the state's strong interest in centralizing claims and defenses raised against an insolvent insurer into a single forum. Absent express statutory authorization for private arbitration to proceed without assent to arbitrate by the liquidator, we hold that the public policy expressed throughout R.C. Chapter 3903, and particularly within R.C. 3903.02 and 3903.21, defeats any general attitude of the courts favoring arbitration." Id., 155 Ohio App.3d 171, 2003-Ohio-5666, 800 N.E.2d 50, at ¶ 42.

{¶ 20} In so holding, we expressly overruled *Fabe*, 68 Ohio App.3d 226, 587 N.E.2d 966, stating: "R.C. 3903.18(A) vests in the liquidator title to not only property and contracts, but 'rights of action.' Further, R.C. 3903.21(A)(11) grants the liquidator the power to 'affirm or disavow any contracts to which the insurer is a party.' Contrary to the court's view in *Fabe*, we hold that [the liquidator's] causes of action against [the directors and officers] are an asset of the insolvent insurer even before the attendant legal and factual issues are fully and finally determined. In our view, compelling arbitration against the will of the liquidator will *always* interfere with the liquidator's powers and will *always* adversely affect the insolvent insurer's assets." (Emphasis sic.) Id., 155 Ohio App.3d 171, 2003-Ohio-5666, 800 N.E.2d 50, at ¶ 45.

{¶ 21} In January 2008, appellee submitted as additional authority in support of its opposition to appellant's motion this court's decision in *Hudson v. John Hancock Fin. Servs., Inc.*, 10th Dist. No. 06AP–1284, 2007-Ohio-6997, 2007 WL 4532704. In that case, this court considered whether R.C. Chapter 3903 precluded enforcement of arbitration clauses against a court-appointed liquidator of an insolvent insurer when those arbitration provisions were part of a contract that the liquidator otherwise sought to enforce.

{¶ 22} In *Hudson*, a dispute arose between the liquidator and John Hancock over amounts potentially owed by John Hancock under several reinsurance agreements pursuant to which John Hancock reinsured risks initially insured by the insolvent insurer. Prior to the insurer becoming insolvent, it filed an action in federal court alleging breach of contract and bad faith against John Hancock under one of the reinsurance contracts. John Hancock invoked the arbitration clause in the reinsurance agreement, and the district court granted John Han-

cock's motion to dismiss the insurer's complaint. Shortly thereafter, the insurer went into liquidation. The court-appointed liquidator continued the arbitration process until 2003, when this court decided *Pipoly*. Based upon *Pipoly*, the liquidator abandoned arbitration with John Hancock over reinsurance issues and filed an action alleging breach of contract and bad faith on all of the reinsurance agreements, including the one that had been the subject of the federal lawsuit. John Hancock filed a motion for dismissal or a stay pending arbitration, arguing that the liquidator was obligated under the reinsurance agreements arbitration provision.

{¶ 23} Applying *Pipoly*, the trial court denied the motion for stay and referral to arbitration. John Hancock appealed, first arguing that *Pipoly* should be overruled as wrongly decided on the question of whether the purposes and policies embodied in R.C. Chapter 3903 outweigh the general public policies in favor of arbitration set forth in state and federal statutes. Finding our decision in *Pipoly* to have fully weighed the public policy in favor of arbitration against the specific statutory scheme addressing the powers and duties of a court-appointed liquidator of an insolvent insurance company, we declined to revisit our holding in *Pipoly* for the simple purpose of reweighing the public-policy analysis included therein.

{¶ 24} John Hancock next attempted to distinguishable *Pipoly* because, in that case, the liquidator disavowed the contracts in toto; in contrast, the liquidator sought to enforce the reinsurance rights of the insolvent insurer against John Hancock while invalidating the arbitration clause. John Hancock argued that it was inconsistent to permit the liquidator to accept the benefits of the reinsurance agreements while renouncing problematic portions thereof.

{¶ 25} We rejected John Hancock's reading of *Pipoly*, noting the general principle that arbitration clauses may be severed from the underlying contract if unenforceable. Explaining *Pipoly*, we averred that "*Pipoly* clearly states that private arbitration conflicts with and undermines the policies and procedures set forth in the Ohio Liquidation Act, and arbitration clauses are consequently unenforceable against the liquidator. This does not create a corollary that the liquidator is thereby obligated to relinquish all rights in any contract held by the insolvent insurer that contains an arbitration clause." *Hudson*, 2007-Ohio-6997, 2007 WL 4532704, at ¶ 19. We further noted that *Pipoly* expressly overruled our prior decision in *Fabe* and that by doing so, this court "manifestly expressed an intent * * * that *Pipoly* should be applied in instances in which the liquidator is attempting to obtain benefits under a reinsurance agreement while repudiating an arbitration clause that conflicts with the purposes and policies of the Liquidation Act." Id. at ¶ 22. Accordingly, we concluded that the trial court did not err in applying *Pipoly* to the facts of the case, "both because we continue to

adhere to the analysis set forth in *Pipoly* regarding the interaction between contractual arbitration clauses [and] the Ohio Liquidation Act * * * and because we find the holding in *Pipoly* applicable to actions by the liquidator to recover under reinsurance agreements." Id. at ¶ 23.

{¶ 26} In response to appellee's submission, appellant maintained that Hudson did not bar its motion to dismiss or to refer to arbitration because the tolling agreement, executed by appellee and appellant on May 2, 2002, preserved all defenses available to appellant as of the date of that agreement. Appellant pointed particularly to paragraph five of the tolling agreement which, as noted above, provides that "[appellant] may otherwise assert, as defenses to any lawsuit or claim the Liquidator may file against [appellant], all defenses that [appellant] has as of the Effective Date, including but not limited to the statute of limitations." Appellant maintained that among the defenses available to it on May 2, 2002, was the right to arbitrate any dispute between it and American Chambers as required under the terms of the engagement letter. Appellant contended that as of May 2, 2002, the date the tolling agreement was executed, *Fabe* was the controlling law and, pursuant to that decision, appellee stood in the shoes of American Chambers and was thus bound by American Chambers' agreement to arbitrate any disputes with appellant arising out of the engagement letter. Appellant argued that it would be manifestly unfair for appellee to argue that the change in the law after *Fabe* deprived appellant of a defense that existed at the time the parties executed the tolling agreement. In support, appellant asserted the general principle that parties to a contract are deemed to have contracted with reference to existing law.

{¶ 27} Appellee filed a response, arguing that this court's decision in *Pipoly*, which expressly overruled *Fabe*, applied to the instant case. Appellee noted the general principle that a decision issued by a court of superior jurisdiction that overrules a former decision is retrospective in its operation, and the effect is not that the former decision was bad law, but that it never was the law. Appellant argued that the Ohio Liquidation Act was in full force and effect when appellant and American Chambers executed the engagement letter, as well as when appellant and appellee later executed the tolling agreement. Appellant argued that only the interpretation and application of that law changed in 2003 with the *Pipoly* decision. Accordingly, argued appellant, the rule in *Pipoly*, which was affirmed in *Hudson*, applied to the dispute as if it were the law at the time the contracts were executed.

{¶ 28} Appellee further challenged appellant's contention that the instant case is distinguishable from *Pipoly* and *Hudson* due to appellee's having entered into the tolling agreement with appellant. Appellee argued that the tolling agreement does not constitute an agreement by appellee to arbitrate, as it does not contain

any reference to arbitration. Appellee maintained that the tolling agreement merely preserved appellant's right to raise certain defenses, but did not concede that any such defenses were valid. Appellee noted that the arbitration provision appellant seeks to enforce is contained in the preliquidation agreement between appellant and American Chambers, not in the tolling agreement between appellant and appellee.

{¶ 29} On September 10, 2009, the trial court issued a decision and judgment entry denying appellant's motion to dismiss or, in the alternative, to stay and to compel arbitration. The court indicated that, while it agreed in principle with appellant's position that courts should rigorously enforce arbitration agreements, it was nonetheless persuaded by this court's decisions in *Pipoly* and *Hudson*. The court concluded that the facts in *Pipoly* and *Hudson* were directly on point, and, as a result, appellee could not be compelled to arbitrate her claims against appellant.

{¶ 30} Appellant timely appeals, advancing six assignments of error:

[1.] The trial court erred in concluding that the Plaintiff, as Liquidator of American Chambers Life Insurance Company ("American Chambers"), cannot be compelled to arbitrate the claims against Ernst & Young LLP ("E & Y").

[2.] The trial court erred in concluding that the Plaintiff, as Liquidator of American Chambers, is not bound by the arbitration provisions contained in the engagement agreement executed between E & Y and American Chambers.

[3.] In holding that the Liquidator was not required to arbitrate the dispute with E & Y, the trial court erred in failing to enforce the Tolling Agreement between the parties, which preserved all claims and defenses as of May 2002, when *Fabe v. Columbus Ins. Co.* (1990), 68 Ohio App.3d 226, 587 N.E.2d 966, was the controlling law and established E & Y's right to compel arbitration.

[4.] The trial court erred in concluding that the facts of *Benjamin v. Pipoly*, 155 Ohio App.3d 171, 2003[-]Ohio[-]5666, 800 N.E.2d 50 and *Hudson v. John Hancock Financial Services, Inc.*, Franklin App. No. 06AP–1284, 2007[-]Ohio[-]6997[, 2007 WL 4532704] are directly on point with the facts of this case.

[5.] In holding that the Liquidator was not required to arbitrate the dispute with E & Y, the trial court erred in concluding that the Liquidator was not bound to comply with the provisions of the Ohio Insurance Code governing repudiation of contracts.

[6.] In holding that the Liquidator was not required to arbitrate the dispute with E & Y, the trial court erred in concluding that the Liquidator was not required to comply with the Final Order of Liquidation and *Benjamin v. Ernst & Young LLP* (July 6, 2004), Ohio Ct. Cl. No. 2003–08886–PR, 2004[-]Ohio[-]3811[, 2004 WL 1598381].

{¶ 31} Although appellant sets forth six separate assignments of error, all six reduce to a single issue, that is, whether the trial court erred in denying appellant's motion to dismiss or, in the alternative, to stay and to compel arbitration. "A trial court's decision granting or denying a stay of proceedings pending arbitration is a final appealable order, R.C. 2711.02(C), and is subject to de novo review on appeal with respect to issues of law, which commonly will predominate because such cases generally turn on issues of contractual interpretation or statutory application." *Hudson*, 2007-Ohio-6997, 2007 WL 4532704, at ¶ 8, citing *Peters v. Columbus Steel Castings Co.*, 10th Dist. No. 05AP–308, 2006-Ohio-382, 2006 WL 225274, ¶ 10.

{¶ 32} As noted previously, appellant based its July 15, 2003 motion to dismiss the complaint or to stay and to compel arbitration upon the arbitration clause contained in the engagement letter between it and American Chambers. That arbitration clause provided that any controversy or claim arising out of or relating to the auditing services provided by appellant would be submitted to arbitration. Appellant maintained that pursuant to this court's decision in *Fabe*, 68 Ohio App.3d 226, 587 N.E.2d 966, which, as noted above, held that the liquidator of an insolvent insurance company is bound by preappointment contractual obligations of the insurer, including binding-arbitration provisions contained within those contractual obligations, the negligence claim that appellee asserted against appellant was subject to the arbitration clause in the preappointment contract between appellant and American Chambers.

{¶ 33} However, as noted above, while the motion was still pending in the trial court, this court decided *Pipoly*, which expressly overruled *Fabe* and held that a court-appointed liquidator is not automatically bound by preappointment contractual obligations of the insurer. We went on to note in *Pipoly*, however, that a liquidator could be bound by preappointment contractual obligations of the insurer, including the obligation to arbitrate, if the liquidator affirmatively indicated his or her election to be responsible for those prior obligations. We found that the liquidator in *Pipoly* was not so bound because she was not a party to the employment agreements that contained the arbitration provisions, and there was nothing in the record to demonstrate that she adopted any of the agreements and expressly assumed the obligations contained therein. Accordingly, we concluded that the arbitration provisions included in the employment agreements could not be enforced against the liquidator.

{¶ 34} Thereafter, appellant, apparently concluding that under our holding in *Pipoly*, the arbitration provisions included in the preappointment engagement letter between it and American Chambers could not be enforced against appellee, as she was not a party to that agreement, maintained that the tolling agreement, executed between appellant and appellee, manifested appellee's election to adopt

the preappointment engagement letter and expressly assume the obligations contained therein, including the obligation to arbitrate. As noted above, appellant relied particularly on paragraph five of the tolling agreement, which provides that appellant could assert as defenses to any lawsuit or claim filed by appellee all defenses appellant had as of the effective date of the tolling agreement. Appellant contends that the right to arbitration is an affirmative defense under Ohio law and, thus, is included among the defensive rights expressly reserved to appellant under the tolling agreement. Appellant maintains that as of May 2, 2002, the effective date of the tolling agreement, *Fabe* was the controlling law on the issue and bound appellee to American Chambers' arbitration agreement with appellant as provided in the engagement letter.

{¶ 35} We disagree with appellant's assertion that the right to arbitration is an affirmative defense. Appellant points to Civ.R. 8(C), which lists "arbitration and award" as an affirmative defense. We note, however, that courts have held that the right to arbitrate is not an affirmative defense pursuant to Civ.R. 8(C). *Garvin v. Independence Place Condominium Assn.* (March 29, 2002), 11th Dist. No. 2001–L–055, 2002 WL 479992, citing *Mabrey v. Victory Basement Waterproofing* (1993), 92 Ohio App.3d 8, 633 N.E.2d 1205.

{¶ 36} Civ.R. 8(C) sets forth a nonexhaustive list of affirmative defenses: "accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, want of consideration for a negotiable instrument, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense." In our view, "arbitration and award," as contemplated by Civ.R. 8(C), pertains to situations where the matter has already been arbitrated and an award has been made pursuant to that arbitration. We note that the rule uses the phrase "arbitration and award" and not the single term "arbitration." Had the drafters of the rule intended to include the "right to arbitration" among the affirmative defenses, the drafters could have done so by expressly including the phrase "right to arbitration" or by using the single term "arbitration."

{¶ 37} This interpretation comports with the definition of "affirmative defense" set forth in Black's Law Dictionary (7th Ed.1999): "[a] defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's * * * claim, even if all the allegations in the complaint are true." Thus, we agree with the *Garvin* court's averment that "[a]rbitration and award," as set forth in Civ.R. 8(C), is not the same as the right to arbitrate under R.C. 2711.02. This court recognized this distinction in *Atkinson v. Dick Masheter Leasing II, Inc.*, 10th Dist. No. 01AP–1016, 2002-Ohio-4299, 2002 WL 1934743, wherein we noted that "Civ.R. 8(C) provides that 'arbitration and award' is a matter that *must* be

affirmatively pled. Courts have held that an arbitration defense, pursuant to R.C. 2711.02, *should* be affirmatively pled." (Emphasis added.) Id. at ¶ 23, citing *Harsco Corp. v. Crane Carrier Co.* (1997), 122 Ohio App.3d 406, 701 N.E.2d 1040.

{¶ 38} We thus conclude that the "right to arbitration" is not an affirmative defense, pursuant to Civ.R. 8(C), and is thus not included among the defensive rights reserved to appellant under the tolling agreement. Thus, we conclude that appellee's execution of the tolling agreement, which preserves defensive rights to appellant, does not manifest appellee's election to adopt the preappointment engagement letter and expressly assume the rights and obligations contained therein, including the right to arbitration. As the right to arbitration was not among the "defenses" preserved by the tolling agreement, the matter was subject to the law as set forth in *Pipoly*, not *Fabe.* Pursuant to *Pipoly*, appellee was not bound by the preappointment contractual obligations of American Chambers to arbitrate any disputes arising out of appellant's provision of auditing services. Accordingly, the trial court did not err in denying appellant's motion to dismiss the complaint or, in the alternative, to stay and to compel arbitration.

{¶ 39} For the foregoing reasons, appellant's six assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

Judgment affirmed.

TYACK, P.J., and MCGRATH, J., concur.

