MORRIS, Appellee,

v.

MORRIS et al., Appellees;

Barry et al., Appellants.

[Cite as *Morris v. Morris,* 189 Ohio App.3d 608, 2010-Ohio-4750.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 10AP–15.

Decided Sept. 30, 2010.

The Winkler Law Firm, L.L.C., and John F. Winkler; and Stubbins, Watson & Erhard Co., L.P.A., and Brent A. Stubbins, for appellees Michael W. Morris and Amy Morris.

Clark & Lowe, L.L.C., and David K. Lowe, for appellants.

FRENCH, Judge.

{¶ 1} Appellants, Richard Barry ("Barry") and Barry Industries, Inc. ("BI") (collectively, "appellants"), appeal from the Franklin County Court of Common Pleas' denial of their motion to stay proceedings pending arbitration. For the following reasons, we reverse and remand.

{¶ 2} Because this action has not proceeded past the pleadings, and because we review only the trial court's denial of a motion to stay proceedings pending arbitration, we glean the following brief factual background from the pleadings and the relevant contracts filed in the trial court, and we discuss the alleged facts in conjunction with the relevant procedural history. Because they were the impetus for appellants' motion to stay, we particularly look to the first amended answer, counterclaims, and cross-claims of appellees Michael W. Morris ("Michael") and Amy Morris ("Amy"), in which Michael and Amy assert both personal claims and claims on behalf of Morgenix, L.L.C. ("Morgenix").[1]

{¶ 3} Patricia A. Morris ("Patricia"), a member of Morgenix, commenced this action on April 12, 2007, by filing a complaint in the Franklin County Court of Common Pleas against Morgenix and its other members, Michael, Amy, and Barry. In her complaint, Patricia sought a judicial dissolution of Morgenix and

---

1. We refer to Michael, Amy, and Morgenix collectively as "appellees."

alleged claims for breach of contract and breach of fiduciary duty against Michael and Amy. In addition to answering, Barry filed a cross-claim against Morgenix for an accounting, and Michael and Amy filed counterclaims and cross-claims against Patricia and Barry for breach of contract and breach of fiduciary duties.

{¶ 4} Patricia is a former employee of DuPont, where she served as a lead researcher in the development of a technology used for detecting and measuring quantities of gasses. DuPont recognized that this technology, the "senplex technology," could be developed into profitable commercial products but was willing to allow third parties to develop and commercialize the technology under license from DuPont. Sometime after the termination of her employment with DuPont, Patricia approached Michael, her brother, to discuss creating a business, using her technical expertise with the senplex technology and his business experience, to license the senplex technology, develop and commercialize it, and provide services to other parties interested in developing and commercializing the technology under their own licenses from DuPont.

{¶ 5} In September 2005, Patricia, Michael, and Amy, Michael's wife, formed Morgenix. Thereafter, in December 2005 and January 2006, the parties executed several agreements relevant to the claims asserted in this action. First, Patricia, Michael, Amy, and Barry executed an operating agreement for Morgenix that set forth the members of Morgenix and their respective ownership interests as follows: Patricia, 45 percent; Michael, 39 percent; Amy, 6 percent; and Barry, 10 percent.[2] Although not signed by the members until various dates in January 2006, the operating agreement states that it was entered into on December 15, 2005. Morgenix then executed a License Agreement with E.I. du Pont de Nemours and Company ("DuPont"), effective January 1, 2006, by which DuPont granted Morgenix an exclusive license for all nonautomotive uses of the senplex technology. Finally, Morgenix entered into a collaboration agreement and sublicense agreement (the "collaboration agreement") with Barry's company, BI, effective January 20, 2006. The collaboration agreement states that Morgenix and BI desire to collaborate in the development of metal oxide gas sensors made in accordance with the senplex technology. Under the collaboration agreement, Morgenix granted BI an exclusive sublicense whereby BI would develop and commercialize military and homeland-security uses of the senplex technology and Morgenix would receive a percentage of all sales by BI.

{¶ 6} Michael served as Morgenix's president until March 23, 2006, when he was informed that Patricia and Barry had voted to terminate his role. On and

---

2. Appellees allege that Barry agreed to invest $100,000 in Morgenix in exchange for a 10 percent interest.

after March 23, 2006, Patricia and Barry demanded that Michael and Amy surrender their interests in Morgenix, but Michael and Amy refused.

{¶ 7} As noted, Patricia filed her complaint in April 2007 against Morgenix, Michael, Amy, and Barry. On June 7, 2007, BI filed a motion to intervene in the action pursuant to Civ.R. 24. Attached as an exhibit to BI's motion was a proposed cross-claim against Morgenix for breach of contract. BI alleged that it had loaned Morgenix $160,775.77, that it had demanded repayment, and that Morgenix had refused to pay. The loan from BI to Morgenix and the outstanding balance were also alleged in Patricia's complaint. BI's proposed cross-claim demanded that Morgenix be dissolved and "that the claim of [BI] * * * be honored * * * and that any assets remaining with [Morgenix] * * * be paid to satisfy such claim." BI withdrew its motion to intervene on June 15, 2007, before the trial court ruled on it.

{¶ 8} On February 22, 2008, with leave of court, Patricia filed an amended complaint. Patricia's amended complaint set forth claims for judicial dissolution of Morgenix, an accounting, breach of the operating agreement, negligence, breach of fiduciary duty, fraud, and a claim for punitive damages.

{¶ 9} On March 7, 2008, Michael and Amy, individually and on behalf of Morgenix, filed an answer to the amended complaint, along with amended counterclaims and cross-claims against Patricia and Barry, as well as claims against new counterclaim defendants, BI and Senplex Sensors, Inc. ("Senplex Sensors"). Michael and Amy allege that after March 23, 2006, Patricia and Barry "concocted a scheme by which the senplex technology could be developed and commercialized without giving [Michael and Amy] the benefit of their 45% interest." They allege that on June 12, 2006, Patricia and Barry formed Senplex Sensors to replace Morgenix and for the purpose of developing and commercializing the senplex technology.[3] They further allege that the scheme involved obtaining the judicial dissolution of Morgenix and a transfer of Morgenix's assets to Senplex Sensors. Appellees' amended pleading sets forth 21 claims for relief, including claims against Barry for conspiracy to abuse process, breach of fiduciary duty, fraud, breach of contract, malice, conspiracy, and unjust enrichment, and claims against BI for conspiracy to abuse process, conspiracy to injure, malice, declaratory judgment, intentional interference with contract, intentional interference with economic relations, unfair competition, and conspiracy. In addition to compensatory damages, Michael and Amy requested injunctive and declaratory relief, including the imposition of a constructive trust in favor of

---

3. Patricia admitted in her amended complaint that she and Barry formed Senplex Sensors on June 12, 2006, in an effort to maintain the viability of the senplex technology due to disagreement among the Morgenix managing members.

Morgenix and/or Michael and Amy on Morgenix's assets, including business opportunities, and benefits or profits from use of the senplex technology.

{¶ 10} On April 14, 2008, appellants filed a motion to stay this action pending arbitration, pursuant to R.C. 2711.02 and Section 3 of the Federal Arbitration Act, Section 1 et seq., Title 9, U.S.Code. Appellants maintain that appellees' claims are subject to arbitration under the collaboration agreement, which contains the following arbitration provision:

> Any and all disputes under this Agreement shall be settled by arbitration to be held in Boston, Massachusetts before a single arbitrator under the rules of the American Arbitration Association. As to any dispute concerning the interpretation of a patent licensed hereunder or other patent issue, the arbitrator shall be an experienced patent attorney versed in the applicable technology of the Patent Rights. The decision of the arbitrator shall be final and binding and shall be enforceable in any state or Federal court having jurisdiction over the applicable party or parties.

Also on or around April 14, 2008, Barry filed a Civ.R. 12(B)(6) motion to dismiss certain of appellees' claims for failure to state a claim, and BI filed a motion to dismiss appellees' claims against it for lack of personal jurisdiction. Appellants also filed motions for extensions of time to respond to discovery and to answer appellees' amended claims, pending the trial court's decisions on the motions to stay and/or dismiss.

{¶ 11} The trial court journalized its denial of appellants' motion to stay on December 17, 2009. The court stated that "[t]he Collaboration Agreement does not require these parties to arbitrate because the agreement is not applicable to all the claims asserted here." The court also found, without stating any basis for its finding, that "any right to arbitrate has been waived."

{¶ 12} Appellants filed a timely notice of appeal, and they raise the following assignments of error:

Assignment of Error No. 1

The court erred at law when it held that the collaboration agreement is not binding in this case.

Assignment of Error No. 2

The trial court erred when it failed to determine the arbitration clause was valid and enforceable.

Assignment of Error No. 3

The trial court erred when it held that the collaboration agreement does not require the parties to arbitrate, because the agreement to arbitrate is not applicable to all the claims asserted.

Assignment of Error No. 4

The trial court erred [when it] failed to determine that appellees' claims relating to the development and commercialization of senplex sensors were subject to arbitration.

Assignment of Error No. 5

The trial court erred when it held that even if the collaboration agreement were applicable, any right to arbitrate has been waived.

Assignment of Error No. 6

The trial court erred when it prohibited appellants from asserting the new affirmative defense of arbitration in response to the appellees' amended pleadings.

Assignment of Error No. 7

The trial court erred when it failed to determine that pursuant to the collaboration agreement that the Federal Arbitration Act was applicable to the motion to stay proceedings pending arbitration.

{¶ 13} Appellants' fifth, sixth, and seventh assignments of error implicate the trial court's finding that appellants waived the right to arbitrate. After noting some general principles concerning arbitration and the applicable standards of appellate review, we will begin our analysis with the waiver issue.

{¶ 14} Ohio public policy encourages arbitration as an alternative means of dispute resolution. See *Schaefer v. Allstate Ins. Co.* (1992), 63 Ohio St.3d 708, 711–712, 590 N.E.2d 1242; *ABM Farms, Inc. v. Woods* (1998), 81 Ohio St.3d 498, 500, 692 N.E.2d 574. That public policy is reflected in R.C. 2711.02(B):

If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration.

When an action involves both arbitrable and nonarbitrable claims, the entire action must be stayed until the issues subject to arbitration are resolved. *Cheney v. Sears, Roebuck & Co.*, 10th Dist. No. 04AP–1354, 2005-Ohio-3283, 2005 WL 1515388, ¶ 12.

{¶ 15} Traditionally, when confronted with appeals from motions to stay pending arbitration, appellate courts apply an abuse-of-discretion standard. See *Pyle v. Wells Fargo Financial*, 10th Dist. No. 05AP–644, 2005-Ohio-6478, 2005 WL 3304098, ¶ 11; *Cheney* at ¶ 7; *Cronin v. California Fitness*, 10th Dist. No. 04AP–1121, 2005-Ohio-3273, 2005 WL 1515369, ¶ 7. The de novo standard of review is proper, however, when the appeal presents a question of law. *Peters v.*

*Columbus Steel Castings Co.*, 10th Dist. No. 05AP–308, 2006–Ohio–382, 2006 WL 225274, ¶ 10, citing *Von Arras v. Columbus Radiology Corp.*, 10th Dist. No. 04AP–934, 2005–Ohio–2562, 2005 WL 1220735, ¶ 8, and *Dunkelman v. Cincinnati Bengals, Inc.*, 158 Ohio App.3d 604, 2004–Ohio–6425, 821 N.E.2d 198, ¶ 18–20. Thus, "[a] trial court's decision granting or denying a stay of proceedings pending arbitration is * * * subject to de novo review on appeal with respect to issues of law, which commonly will predominate because such cases generally turn on issues of contractual interpretation or statutory application." *Hudson v. John Hancock Financial Servs.*, 10th Dist. No. 06AP–1284, 2007–Ohio–6997, 2007 WL 4532704, ¶ 8, citing *Peters* at ¶ 10.

{¶ 16} A contractual arbitration clause "is generally viewed as an expression that the parties agree to arbitrate disagreements within the scope of the arbitration clause, and, with limited exceptions, an arbitration clause is to be upheld just as any other provision in a contract should be respected." *Williams v. Aetna Fin. Co.* (1998), 83 Ohio St.3d 464, 471, 700 N.E.2d 859. Also, like any other contractual right, however, parties may waive the right to arbitrate. *Murtha v. Ravines of McNaughton Condominium Assn.*, 10th Dist. No. 09AP–709, 2010–Ohio–1325, 2010 WL 1229211, ¶ 20; *Mills v. Jaguar–Cleveland Motors, Inc.* (1980), 69 Ohio App.2d 111, 113, 23 O.O.3d 142, 430 N.E.2d 965. The *Mills* court explained:

> [A] plaintiff's waiver may be effected by filing suit. When the opposite party, the potential defendant, is confronted with a filed lawsuit, the right to arbitrate can be saved by seeking enforcement of the arbitration clause. This is done under R.C. 2711.02 by application to stay the legal proceedings pending the arbitration. Failure to move for a stay, coupled with responsive pleadings, will constitute a defendant's waiver.

See also *Med. Imaging Network, Inc. v. Med. Resources*, 7th Dist. No. 04 MA 220, 2005–Ohio–2783, 2005 WL 1324746 (noting that "[i]t is usually *the defendant's* actions after plaintiff's filing of the lawsuit that are the subject of appellate disputes on waiver of the right to arbitrate" [emphasis sic], since the plaintiff waives arbitration by filing suit).

{¶ 17} Given Ohio's public policy favoring arbitration, the party asserting that the right to arbitrate has been waived bears the burden of proving waiver. *Murtha* at ¶ 20. " '[T]he question of waiver is usually a fact-driven issue and an appellate court will not reverse' the trial court's decision 'absent a showing of an abuse of discretion.' " Id., quoting *ACRS, Inc. v. Blue Cross & Blue Shield of Minnesota* (1998), 131 Ohio App.3d 450, 722 N.E.2d 1040; see also *Stoll v. United Magazine Co.*, 10th Dist. No. 03AP–752, 2004–Ohio–2523, 2004 WL 1109718, ¶ 23. An abuse of discretion requires more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or

unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 18} A court will not lightly infer waiver of a right to arbitrate. *Harsco Corp. v. Crane Carrier Co.* (1997), 122 Ohio App.3d 406, 415, 701 N.E.2d 1040. A party asserting waiver must prove that the waiving party knew of the existing right to arbitrate and, based on the totality of the circumstances, acted inconsistently with that known right. *Murtha* at ¶ 21; *Tinker v. Oldaker*, 10th Dist. No. 03AP–671, 2004–Ohio–3316, 2004 WL 1405563, ¶ 19, citing *Atkinson v. Dick Masheter Leasing II, Inc.*, 10th Dist. No. 01AP–1016, 2002–Ohio–4299, 2002 WL 1934743, ¶ 20. " 'The essential question is whether, based on the totality of the circumstances, the party seeking arbitration has acted inconsistently with the right to arbitrate.' " *Harsco* at 414, quoting *Phillips v. Lee Homes, Inc.* (Feb. 17, 1994), 8th Dist. No. 64353, 1994 WL 50696. In determining whether the totality of circumstances supports a finding of waiver, a court may consider (1) whether the party seeking arbitration invoked the court's jurisdiction by filing a complaint or claim without first requesting a stay, (2) the delay, if any, by the party seeking arbitration to request a stay, (3) the extent to which the party seeking arbitration has participated in the litigation, and (4) whether prior inconsistent acts by the party seeking arbitration would prejudice the nonmoving party. *Tinker* at ¶ 20, citing *Baker–Henning Prods., Inc. v. Jaffe* (Nov. 7, 2000), 10th Dist. No. 00AP–36, 2000 WL 1664869.

{¶ 19} Appellees primarily argue that appellants waived the right to arbitrate when BI sought leave to intervene and file a cross-claim, demanding judgment against Morgenix, in June 2007. Appellants, on the other hand, argue that BI's motion for leave to intervene and file an answer and cross-claim did not amount to an enforceable waiver of the right to arbitrate because the claim asserted in the proposed cross-claim was not subject to arbitration and because BI withdrew its motion for leave to intervene before the trial court ruled on it.

{¶ 20} Appellees rely on *Blackburn v. Citifinancial, Inc.*, 10th Dist. No. 05AP–733, 2007–Ohio–1463, 2007 WL 927222, which they contend is dispositive of appellants' arguments opposing the trial court's finding of waiver. In Blackburn, the plaintiff, as executor of the estate of Dorothy E. Blackburn, filed claims against Citifinancial, including claims for breach of contract, negligence, fraud, and predatory lending, arising out of a promissory note, mortgage, and related loan documents secured by the decedent's home. In lieu of an answer to the plaintiff's complaint, Citifinancial moved the trial court to stay the action pending arbitration, based on an arbitration agreement executed in conjunction with the subject loan documents. The plaintiff opposed Citifinancial's motion and argued that Citifinancial waived its right to enforce the arbitration agreement by previously filing and voluntarily dismissing a foreclosure action against the

decedent and her home based on the loan documents. The trial court granted the motion to stay, but this court reversed. Because Citifinancial was undisputedly aware of its own arbitration clause, this court framed the dispositive issue as whether Citifinancial acted inconsistently with its rights under the arbitration agreement and concluded that "by actively pursuing litigation in lieu of arbitration by filing a complaint to enforce its contractual rights under the note, Citifinancial has waived its own arbitration clause." Id. at ¶ 19.

{¶ 21} Appellees maintain that BI's filing of a cross-claim seeking judgment against Morgenix is equivalent to Citifinancial's filing of its foreclosure complaint in *Blackburn* and amounts to a waiver of the right to enforce the arbitration provision in response to appellees' amended pleading. Appellees also maintain that Blackburn precludes any argument that BI's withdrawal of its motion to intervene operated as a revocation of waiver.

{¶ 22} Appellants assert that BI's proposed cross-claim, which was not related to the scope of the collaboration agreement, was not subject to arbitration, whereas Citifinancial's foreclosure complaint in *Blackburn* sought to enforce contractual rights under the loan documents, in direct contravention of the arbitration clause. Accordingly, appellants suggest that unlike in *Blackburn*, BI's proposed cross-claim does not amount to a waiver of the right to arbitrate. Appellants further argue that the withdrawal of BI's motion to intervene would have operated as a revocation of any waiver. Upon consideration of the totality of the circumstances, we conclude that BI's request to file a cross-claim against Morgenix was not inconsistent with the contractual right to arbitrate, as set forth in the collaboration agreement, because BI never actually filed its cross-claim and because the proposed cross-claim would not have been subject to arbitration.

{¶ 23} Most detrimental to appellees' position is the fact that although BI requested leave to intervene and file a cross-claim to establish its creditor claim against Morgenix, BI withdrew the motion for leave before the trial court ruled on it. The proposed cross-claim was filed only as an attachment to BI's motion to intervene and was not signed by BI's counsel. Accordingly, BI did not invoke the trial court's jurisdiction by filing a claim against Morgenix.[4] We cannot conclude that BI's request for leave to intervene and file a cross-claim, which BI withdrew before the court ruled on it, constitutes a waiver of the right to arbitrate claims under the collaboration agreement.

---

4. Although the trial court erroneously signed an order on December 26, 2007, purportedly granting BI's motion to intervene, that motion had been withdrawn six months earlier. Therefore, the trial court's order was of no effect. Moreover, BI did not, at any time, independently file the proposed cross-claim.

{¶ 24} Even had BI filed its cross-claim, we would reject any finding of waiver for the additional reason that BI's cross-claim was unrelated to the collaboration agreement. When BI requested leave to intervene, the only claims pending were those alleged in Patricia's original complaint and Barry's cross-claim for an accounting against Morgenix. The original complaint contained neither claims against BI nor allegations regarding the collaboration agreement. BI moved to intervene solely to protect its interest in Morgenix's assets as a result of a debt alleged in Patricia's complaint, and BI's proposed cross-claim involved only the alleged debt and BI's priority as a creditor upon the requested dissolution of Morgenix. The proposed cross-claim contained no allegations regarding the collaboration agreement or the senplex technology that is the subject of that agreement. BI demanded only that Morgenix be dissolved and "that the claim of [BI] * * * be honored * * * and that any assets remaining with [Morgenix] * * * be paid to satisfy such claim." Thus, unlike in *Blackburn*, in which the earlier foreclosure complaint was based entirely on the loan documents giving rise to the right to arbitration, BI's proposed cross-claim was unrelated to the collaboration agreement.

{¶ 25} When a party subject to an arbitration clause files a judicial action on a nonarbitrable matter, that party does not waive its right to arbitrate matters that fall within the arbitration clause. See *U.S. Bank, N.A. v. Wilkens*, 8th Dist. No. 93088, 2010–Ohio–262, 2010 WL 323432, ¶ 20. While appellants have asserted in various memoranda and briefs that Morgenix's claims, including a claim related to BI's loan to Morgenix, are subject to arbitration, BI's subsequent assertions regarding the arbitrability of claims regarding that loan do not affect our analysis whether BI's proposed cross-claim would have been subject to arbitration under the collaboration agreement, which is a question of law for the court to determine upon examination of the contract. See *Gibbons–Grable Co. v. Gilbane Bldg. Co.* (1986), 34 Ohio App.3d 170, 172, 517 N.E.2d 559, citing *Siam Feather & Forest Prods. Co., Inc. v. Midwest Feather Co., Inc.* (S.D.Ohio 1980), 503 F.Supp. 239, 241. In light of the pleadings as they existed at the time, it is unreasonable to suggest that by filing a claim to protect its unrelated interest in recovering money loaned to Morgenix in the event of Morgenix's judicial dissolution, BI would have waived the right to arbitrate then unfiled claims under the collaboration agreement.

{¶ 26} For these reasons, we discern no reasonable basis for concluding that BI's actions with respect to its June 2007 motion for leave to intervene and to file an answer and cross-claim were inconsistent with its right to enforce the arbitration provision. Furthermore, our determination that BI's motion did not amount to a waiver of the right to arbitrate renders unnecessary any discussion

of appellants' additional argument that withdrawal of the motion to intervene operated as a revocation of any waiver.

{¶ 27} Appellees next contend that appellants waived the right to enforce the arbitration provision by filing other motions contemporaneously with the motion to stay pending arbitration. Those motions included (1) BI's motion to dismiss for lack of jurisdiction over BI, (2) Barry's Civ.R. 12(B)(6) motion to dismiss certain of appellees' claims for failure to state a claim upon which relief could be granted, (3) Barry and BI's motion for an extension of time to move or plead, pending resolution of the motions to stay and to dismiss, and (4) BI's motion for an extension of time to respond to discovery. In particular, appellees argue that the Civ.R. 12(B)(6) motion to dismiss was "[a] request for relief effectively barring arbitration of claims" and was, therefore, inconsistent with the assertion of a right to arbitrate. We disagree.

{¶ 28} A motion to dismiss for failure to state a claim is a procedural tool for testing the sufficiency of a pleading, and "a dismissal for failure to state a claim is without prejudice except in those cases where the claim cannot be pleaded in any other way." *Fletcher v. Univ. Hosps. of Cleveland,* 120 Ohio St.3d 167, 2008–Ohio–5379, 897 N.E.2d 147, ¶ 17. Barry's motion to dismiss was based on alleged pleading deficiencies, and there has been no suggestion that appellees could not correct those perceived deficiencies to state a claim. Like a dismissal pursuant to Civ.R. 12(B)(6), a dismissal for lack of personal jurisdiction, pursuant to Civ.R. 41(B)(4)(a), is also a failure otherwise than on the merits. *Perry v. Eagle–Picher Industries, Inc.* (1990), 52 Ohio St.3d 168, 173, 556 N.E.2d 484. Thus, even if appellants were correct in their assertion of appellees' pleading deficiencies, as the trial court concluded in part, or in their assertion of lack of personal jurisdiction over BI, appellants' motions to dismiss are not inconsistent with a right to arbitrate properly asserted claims pursuant to the arbitration provision.

{¶ 29} This and other Ohio appellate courts have rejected assertions of waiver regarding an arbitration agreement in situations where the party requesting arbitration has been far less timely in moving for a stay and has more actively participated in the litigation. For example, in *Murtha,* this court affirmed a stay even though the party requesting arbitration filed an answer and counterclaim two months before filing a motion for a stay. Similarly, in *Harsco,* the Third District Court of Appeals rejected an assertion of waiver when a party requesting a stay pending arbitration did not request the stay until three months after filing an answer and after answering and requesting discovery. See also *Milling Away, L.L.C. v. Infinity Retail Environments, Inc.,* 9th Dist. No. 24168, 2008–Ohio–4691, 2008 WL 4233768 (no waiver when party filed counterclaim and

waited six months before filing a motion to stay, while the parties exchanged several motions with regard to the pleadings).

{¶ 30} Here, appellants filed a motion for a stay pending arbitration within the stipulated time for appellants to move or plead to appellees' amended counterclaims and cross-claims, which included the first claims asserted against BI in this action. The filing of additional motions, contesting the trial court's jurisdiction and the sufficiency of appellees' pleading and requesting an extension of time to plead and answer discovery pending the trial court's resolution of the motions to stay and/or dismiss, was not inconsistent with appellants' invocation of the right to arbitrate.

{¶ 31} In a final argument in support of waiver, appellees state that Barry failed to raise arbitration as an affirmative defense in his reply to appellees' original cross-claim, filed June 27, 2007. This argument responds to appellants' sixth assignment of error, by which appellants contend that the trial court erred by purportedly prohibiting appellants from asserting the defense of arbitration in response to appellees' amended counterclaims and cross-claims. Appellants argue that appellees' March 2008 amended counterclaims and cross-claims superseded the earlier pleading, rendering it of no legal effect, and permitted Barry to raise previously unasserted affirmative defenses.

{¶ 32} It is well settled that an amended pleading supersedes the original pleading. *Abram & Tracy, Inc. v. Smith* (1993), 88 Ohio App.3d 253, 263, 623 N.E.2d 704; *Carlock v. Coleman* (Aug. 22, 1990), 7th Dist. No. 89 C.A. 121, 1990 WL 121874, quoting 75 Ohio Jurisprudence Pleading, 343, Section 469 (" 'it is hornbook law that an amended pleading supersedes the original, the latter being [treated] thereafter as nonexistent' "). Therefore, an amended pleading opens the door for defending parties to raise new affirmative defenses. *Fitzpatrick v. Potter* (Oct. 14, 2005), S.D.Ohio No. 1:04–CV–369, 2005 WL 2622024. Further, this court recently held that an arbitration defense, pursuant to R.C. 2711.02, is not an affirmative defense under Civ.R. 8(C). See *Hudson v. Ernst & Young, L.L.P.*, 10th Dist. No. 09AP–949, 189 Ohio App.3d 60, 2010–Ohio–2731, 937 N.E.2d 585, ¶ 35, 38. While the right to arbitrate should be affirmatively pleaded, it is not mandated by Civ.R. 8(C) to avoid waiver. Id. at ¶ 37. Thus, the mere fact that Barry did not affirmatively plead an arbitration defense, pursuant to R.C. 2711.02, in response to appellees' original pleading does not necessarily result in a finding of waiver, especially when, as here, appellees later filed amended counterclaims and cross-claims, effectively abandoning their prior pleading. Therefore, to the extent that the trial court based its finding of waiver on the absence of an arbitration defense in Barry's reply to appellees' June 2007 pleading, we sustain appellants' sixth assignment of error.

{¶ 33} Based on the totality of the circumstances, we conclude that appellees failed to carry their burden of establishing that appellants acted inconsistently with the right to arbitrate. Therefore, we conclude that the trial court abused its discretion in concluding that appellants waived the right to enforce the arbitration provision, and we sustain appellants' fifth assignment of error.

{¶ 34} Appellants' seventh assignment of error also stems from the trial court's finding of waiver. Under that assignment of error, appellants argue that the trial court erred by not determining that the Federal Arbitration Act was applicable to the motion to stay pending arbitration. Specifically, appellants argue that under federal law, a party asserting waiver of the right to arbitration must demonstrate prejudice and that appellees here failed to establish prejudice as a result of appellants' alleged delay in asserting the right to arbitrate. Having already concluded that the trial court erred by holding that appellants waived the right to arbitrate, we need not engage in further discussion regarding prejudice. Accordingly, appellants' seventh assignment of error is moot.

{¶ 35} We now turn to appellants' remaining assignments of error, which stem from the trial court's conclusion that the arbitration provision itself does not apply to this matter.

{¶ 36} Under their first and second assignments of error, appellants argue that the trial court erred by failing to find that both the collaboration agreement generally and the arbitration provision specifically are valid and enforceable contracts. As appellants correctly note, however, no party has disputed that the collaboration agreement is a binding, enforceable contract. Further, no party has argued any basis for invalidating the arbitration provision. In the absence of any such argument, the trial court did not hold that the collaboration agreement or the arbitration provision was invalid. Although the trial court found that "the Collaboration Agreement is not binding in this case," the court went on to explain that the arbitration provision was not applicable to all of the asserted claims and that as a result, arbitration was not required. Had the trial court simply concluded that the collaboration agreement or the arbitration provision was not an enforceable contract, the court's analysis would have been at an end, and no further explanation would have been necessary. The court's explanation clarifies that its decision to deny the motion to stay was based not on the validity or enforceability of the collaboration agreement or the arbitration provision but on the scope of the arbitration provision in relation to the asserted claims. That finding is the subject of appellants' subsequent assignments of error. Denial of a motion to stay pending arbitration because the claims asserted do not fall within the scope of the agreement to arbitrate does not equate to a finding that the arbitration provision itself is invalid or unenforceable. Accordingly, we overrule appellants' first and second assignments of error.

{¶ 37} In their third assignment of error, appellants assert that the trial court erred by denying the motion to stay based on its conclusion that the collaboration agreement did not require arbitration "because the agreement is not applicable to all the claims asserted here." This statement seems to misstate the law regarding arbitration. It is well settled that when an action involves both arbitrable and nonarbitrable claims, the entire action must be stayed until the issues subject to arbitration are resolved. *Cheney*, 2005–Ohio–3283, 2005 WL 1515388, at ¶ 12. Thus, if the trial court determined that some of appellees' claims fell within the scope of the arbitration clause, it would have been error to deny appellants' motion for a stay. Nevertheless, as appellees aptly argue, unless this court concludes that at least one of appellees' claims is subject to arbitration, any error in the trial court's statement is harmless. Therefore, before resolving appellant's third assignment of error, we must consider appellants' argument, under their fourth assignment of error, that appellees' claims relating to the development and commercialization of senplex sensors were within the scope of the arbitration provision.

{¶ 38} The question whether a controversy is arbitrable under a contractual arbitration agreement is a question of law for the court to determine upon an examination of the contract. *Gibbons–Grable*, 34 Ohio App.3d at 172, 517 N.E.2d 559, citing *Siam Feather & Forest Prods.*, 503 F.Supp. at 241; *McGuffey v. LensCrafters, Inc.* (2001), 141 Ohio App.3d 44, 51–52, 749 N.E.2d 825. In construing a contract providing for arbitration, we remain mindful of Ohio's public policy favoring and encouraging arbitration. *Gibbons–Grable* at 173, citing *Brennan v. Brennan* (1955), 164 Ohio St. 29, 57 O.O. 71, 128 N.E.2d 89, and *Campbell v. Automatic Die & Prods. Co.* (1954), 162 Ohio St. 321, 55 O.O. 195, 123 N.E.2d 401. When a court is faced with a contractual arbitration clause, there is a presumption of arbitrability and the court should not deny arbitration " ' "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." ' " *Council of Smaller Ents. v. Gates, McDonald & Co.* (1998), 80 Ohio St.3d 661, 666, 687 N.E.2d 1352, quoting *AT & T Technologies, Inc. v. Communications Workers of Am.* (1986), 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648, quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.* (1960), 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409.

{¶ 39} Ohio courts may determine whether a claim is within the scope of an arbitration agreement by " ' ask[ing] if [the claim] could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement.' " *Alexander v. Wells Fargo Financial Ohio 1, Inc.*, 122 Ohio St.3d 341, 2009–Ohio–2962, 911 N.E.2d 286, ¶ 24, quoting *Fazio v. Lehman Bros., Inc.* (C.A.6, 2003), 340 F.3d 386, 395. "The

overarching issue is whether the parties agreed to arbitrate the issue." *Academy of Medicine of Cincinnati v. Aetna Health, Inc.,* 108 Ohio St.3d 185, 2006–Ohio–657, 842 N.E.2d 488, ¶ 19, citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.* (1985), 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444.

{¶ 40} Here, by executing the arbitration provision, Morgenix and BI agreed that "[a]ny and all disputes under [the Collaboration Agreement] shall be settled by arbitration." Only the claims asserted on behalf of Morgenix against BI may be subject to arbitration under the collaboration agreement because Morgenix and BI were the only parties to that agreement. In spite of the strong policy in favor of arbitration, " 'a party cannot be compelled to arbitrate a dispute which he has not agreed to submit to arbitration.' " *Benjamin v. Pipoly,* 155 Ohio App.3d 171, 2003–Ohio–5666, 800 N.E.2d 50, ¶ 33, quoting *Teramar Corp. v. Rodier Corp.* (1987), 40 Ohio App.3d 39, 531 N.E.2d 721, paragraph one of the syllabus. Thus, before a court can order litigants to arbitrate, the court must determine not only whether the dispute falls within the scope of an arbitration agreement but also whether the litigants are the same parties named in the arbitration agreement. *West v. Household Life Ins. Co.,* 170 Ohio App.3d 463, 2007–Ohio–845, 867 N.E.2d 868, ¶ 12. Here, the collaboration agreement identified the parties as Morgenix and BI, and the agreement was executed by Barry, solely in his capacity as the president of BI, and by Michael, solely in his capacity as the president of Morgenix. Accordingly, because only Morgenix and BI agreed to submit their disputes to arbitration, we confine our discussion of the scope of the arbitration provision to Morgenix's claims against BI.

{¶ 41} To determine whether Morgenix's claims against BI fall within the scope of the arbitration provision, we must more closely examine both appellees' amended pleading and the collaboration agreement. In the collaboration agreement, Morgenix granted BI "an exclusive, worldwide sub-license in the Field, pursuant to the aforesaid DuPont License, under the Senplex Technology, to make, have made, use, sell or otherwise dispose of Sensors in the Field during the term of this Agreement." The collaboration agreement defines senplex technology as "the technology which Morgenix has licensed from DuPont" and defines Sensors as "metal oxide gas sensors made in accordance with the Senplex Technology and covered by one or more claims of patents or patent applications sub-licensed to [BI] by Morgenix hereunder." The collaboration agreement defines the "Field" as "all products and processes for use in: a) Military applications; b) Defense applications; c) Homeland security applications." Pursuant to the collaboration agreement, BI was required to "use its best efforts to develop and manufacture Sensors" and was given "the sole right to determine the manner and extent of the development activities." BI was also granted "the sole

right to determine the manner and extent of marketing and sales efforts and pricing of the Sensors."

{¶ 42} In their amended pleading, appellees allege that Morgenix had an exclusive right from DuPont for all nonautomotive uses of the senplex technology, pursuant to which Morgenix granted BI an exclusive sublicense to develop and commercialize military and homeland-security uses of the senplex technology. BI's authority to develop and commercialize the senplex technology, at least with respect to military and homeland-security uses, stemmed entirely from the collaboration agreement. The derivative claims asserted on behalf of Morgenix against BI allege wrongdoing with respect to activities undertaken by BI in the development and commercialization of the senplex technology, to the detriment of Morgenix. For example, appellees alleged that BI acted with the goal of eliminating Morgenix, while maintaining Patricia, Barry, and BI's ability to develop and commercialize the senplex technology. Appellees' general claims that BI acted wrongfully with respect to its development and commercialization of the senplex technology, and related sales and marketing activities, may not be asserted absent reference to the collaboration agreement or the parties' contractual relationship, which was the sole source of BI's authority to conduct activities with respect to the development and commercialization of the senplex technology in the nonautomotive areas defined in the collaboration agreement. Accordingly, we conclude that those claims fall within the scope of the arbitration provision.

{¶ 43} That is not to say, however, that all of Morgenix's claims against BI are arbitrable. In Count 16, appellees request a declaratory judgment that Morgenix is not indebted to BI. This claim, like BI's proposed cross-claim discussed in relation to the issue of waiver, is based on BI's assertion that it extended to Morgenix a line of credit, which has an outstanding balance of $160,775.77. As stated above, this claim is unrelated to the collaboration agreement or the senplex technology, and the arbitration provision cannot be read to cover this claim. Additionally, Count 19 alleges that BI and Senplex Sensors "acted in concert to commence competition with Morgenix in Morgenix's business of providing expertise to companies in the development and commercialization of *automotive* uses of the senplex technology." (Emphasis added.) Neither Morgenix's license from DuPont nor Morgenix's sublicense to BI, memorialized in the collaboration agreement, extended to automotive uses of the senplex technology. Rather, Morgenix's license from DuPont applied to only nonautomotive uses of the senplex technology. Accordingly, we conclude that Count 19 is unrelated to the collaboration agreement and does not fall within the scope of the arbitration provision.

{¶ 44} Appellees also assert the distinction between automotive and nonautomotive uses of the senplex technology in an attempt to distance their other claims

against BI from the Collaboration Agreement. The broadly worded allegations of appellees' amended counterclaims and cross-claims, however, do not limit the remaining claims to BI's actions relating to the development and commercialization of the senplex technology for automotive uses. In fact, appellees admit that certain counts of their pleading are broad and could be construed as asserting claims that BI deprived Morgenix of revenue from nonautomotive applications. Moreover, appellees specifically alleged that appellants acted to have Morgenix's license with DuPont, which granted a license limited to nonautomotive uses of the senplex technology, replaced by a license from DuPont directly to Senplex Sensors. Thus, appellees' allegations and claims encompass BI's actions with respect to nonautomotive uses of the senplex technology, stemming from the collaboration agreement. Upon review of appellees' pleading, and resolving doubts in favor of arbitration, we conclude that Morgenix's claims against BI, except as set forth above, are subject to arbitration.

{¶ 45} Having determined that certain of Morgenix's claims against BI fall within the scope of the arbitration provision, we must conclude that the trial court erred by denying appellants' motion to stay pending arbitration. See *Cheney* at ¶ 12. Therefore, we sustain appellants' third and fourth assignments of error.

{¶ 46} In conclusion, we sustain appellants' third, fourth, fifth, and sixth assignments of error, overrule appellants' first and second assignments of error, and render appellants' seventh assignment of error moot. For these reasons, we reverse the judgment of the Franklin County Court of Common Pleas, and we remand this matter to the trial court with instructions to enter a stay pending arbitration pursuant to R.C. 2711.02(B).

Judgment reversed
and cause remanded.

BROWN and SADLER, JJ., concur.